Keystone Building Corporation *v.* Lincoln Savings and Loan Association, Appellant.

Argued November 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John A. Metz, Jr.,* with him *Metz, Cook, Hanna & Kelly,* for appellant.

*Frank J. Gaffney,* with him *Thorp, Reed & Armstrong,* for appellee.

OPINION BY JACOBS, J., March 31, 1975:

This appeal from an interlocutory order was permitted by Order of this Court dated May 8, 1974, at No. 837 Miscellaneous Docket, pursuant to our authority under Section 211.501 (b) of the Appellate Court Jurisdiction Act of 1970.[1]

The facts of this case reveal that "[t]he Keystone Building Corporation, the Lincoln Savings and Loan Association, and the Manufacturers Life Insurance Company of Canada entered into a construction loan agreement on October 7, 1968. Under the terms of the agreement Lincoln agreed to lend Keystone the funds necessary to finance Keystone's construction of an apartment

---

1. Act of July 31, 1970, P.L. 673, art. V, §501; 17 P.S. §211.501 (b) (Supp. 1974-75). This section permits this Court to accept an appeal from an interlocutory order where the lower court certifies that the matter involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter.

complex and Manufacturers agreed to be the permanent mortgagee for the project.

"In May of 1969, approximately two months after construction had begun, a dispute arose between Lincoln and Keystone over the terms and conditions under which Lincoln was obligated to advance the necessary funds. Essentially, the dispute revolved around the nature and sufficiency of the proofs of expenditure which Keystone was required to present to Lincoln as precondition for payment. After protracted negotiations, Keystone commenced a suit in equity on July 3, 1969, asking that Lincoln be compelled to advance the requisitioned loan proceeds and that money damages be assessed against Lincoln for its asserted breach of contract.

"A hearing was held and, on July 18, 1969, the court decreed that Keystone had to support its present and future requisitions for loan proceeds in a specified manner and that Lincoln had to promptly pay the amounts thus requisitioned. Unfortunately, Lincoln and Keystone could not agree on the meaning of the decree, and the dispute continued unabated. On August 5, Keystone petitioned for and was granted a rule to show cause why Lincoln should not be held in contempt for allegedly not complying with the July 18 decree. A lengthy hearing was held and, on October 6, the court decreed that although Lincoln had not been in contempt, it was obligated to pay Keystone the aggregate of its claim since the dispute arose, $116,286.27, and to advance all sums properly requisitioned thereafter.

"The controversy continued, however, and on October 10, Keystone again petitioned for and was granted a rule to [show] cause why Lincoln should not be held in contempt. Lincoln filed a motion to dismiss this second rule on the grounds of prematurity, but the motion was dismissed. Thereafter, on October 16, Lincoln appealed the decrees of July 18, October 6 and October 15 to [the Pennsylvania Supreme Court].

"On December 8, 1969, Keystone contacted Lincoln and informed them that the permanent mortgagee, Manufacturers, was prepared to exercise its option to purchase from Lincoln, for a sum equal to the amounts already disbursed by Lincoln and the accrued interest thereon, the Keystone mortgage note and mortgage. Lincoln promptly complied with this request and transferred to Manufacturers, for the agreed consideration, the mortgage note and mortgage given it by Keystone to secure the construction loan."[2] Lincoln then filed a "Suggestion of Mootness" with the Supreme Court and asked the Court to dismiss the appeal and the case.

The Court, through Justice ROBERTS, dismissed the appeal but refused to dismiss the underlying action.

"While it is apparent that one of the central issues in this case, the propriety of ordering Lincoln to disburse certain sums in accordance with the construction loan agreement, is now moot, it does not follow that the case ought to be dismissed altogether.

". . . The action was properly in equity when first brought, and since there is still the possibility that that court could grant Keystone some sort of relief, the question whether further relief should be granted is initially for the trial court to decide. Accordingly we dismiss this appeal and remand the case for further consistent proceedings." *Keystone Bldg. Corp. v. Lincoln Sav. and Loan Ass'n,* 439 Pa. 444, 447-448, 266 A.2d 648, 649-650 (1970).

On remand the lower court, per Judge SILVESTRI, transferred the action to the law side of the court and ordered Keystone to file a Complaint. In that complaint Keystone averred that the prior orders of the court and Lincoln's appeal had conclusively determined the question of liability and that that determination was res judicata

---

2. This statement of facts is quoted from *Keystone Bldg. Corp. v. Lincoln Sav. and Loan Ass'n,* 439 Pa. 444, 446-447, 266 A.2d 648, 649 (1970), an earlier appeal in this same case.

as to the instant complaint. Following answer, the court, per Judge LOUIK, agreed and on April 22, 1974, ordered the case to "proceed solely on the question of damages, if any, sustained by [Keystone]." It is this order from which Lincoln appeals.

The issue before us is whether the three orders of the lower court, which collectively determined that Lincoln was obligated to pay a specific sum to Keystone and which ordered Lincoln to make that and future payments, act as a bar to Lincoln's attempt in the present posture of the case to litigate the question of the basic liability on which Keystone grounds its claim for damages. We hold that they do.

The lower court entered an order from which Lincoln took an appeal to the Pennsylvania Supreme Court.[3] The Court neither reversed nor vacated the orders from which the appeal was taken; and those orders, therefore, remain binding upon the parties. "When a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered and not reversed on appeal is, as between the parties to the suit and their privies, final and conclusive with regard to every fact which might properly be considered in reaching a judicial determination and with regard to all points of law adjudged as those facts and points of law relate directly to the cause of action in litigation." *Goldstein v. Ahrens*, 379 Pa. 330, 334, 108 A.2d 693, 695 (1954); *see Sustrik v. Jones & Laughlin Steel Corp.*, 413 Pa. 324, 197 A.2d 44 (1964). It is not material that the original decree in this case was a consent decree rather than a determination on the merits. "Although a consent decree is not a legal determination by the court of the matters in controversy, . . . it binds *the parties* with the same force and effect as if a final decree has been rendered after a full hearing upon the merits. . . . The fact that without the consent of the

---

3. The Supreme Court treated this order as a final order; and therefore, we will treat it in the same manner.

parties the court might not have rendered the judgment does not affect its effect as res judicata. . . . Were this not so, a consent decree would have little value." *Zampetti v. Cavanaugh,* 406 Pa. 259, 265, 176 A.2d 906, 909 (1962) (citations omitted; emphasis in original). "In the absence of fraud or mutual mistake a collateral attack upon a consent decree, as against any final judgment, is improper." *International Organiz. Masters, Mates & Pilots of America, Local No. 2 v. International Organiz. Masters, Mates & Pilots of America, Inc.,* 456 Pa. 436, 441, 318 A.2d 918, 921 (1974).

The orders which established Lincoln's liability represent a final determination by which Lincoln remains bound. Its appeal to this Court is nothing more than an attempt to relitigate a controverted issue which has already been fully resolved in a prior appeal. Lincoln's failure in the prior appeal to raise issues which properly and necessarily would have been before the Court bars any attempt to raise those issues again. *United States v. Peter,* 479 F.2d 147 (6th Cir. 1973). Accordingly, because Lincoln is barred from raising the issue of any liability which has been determined previously by the court below, we affirm the order of the court below as to all issues of liability already litigated. *United States v. Secor,* 476 F.2d 766 (2d Cir. 1973).

Order affirmed.