390 A.2d 1305

**Kathleen ARMSTEAD, Appellant,**

**v.**

**Wilburt DANDRIDGE.**

Superior Court of Pennsylvania.

Argued April 11, 1977.

Decided July 12, 1978.

416

Mark B. Greenblatt, Pittsburgh, with him John W. Herold, Pittsburgh, for appellant.

John F. McGinty, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE and SPAETH, JJ.

PRICE, Judge:

This is an appeal from an order of the court below granting appellee's petition for vacation of a support order in favor of appellant's child, cancelling all support arrearages, and dismissing appellant's petition for a rule to show cause why appellee should not be held in contempt for failure to comply with the support order. We reverse the order of the lower court and reinstate the support order.

An exposition of the factual background of this matter is necessary to an analysis of the issue presented.[1] On April 22, 1970, appellant Kathleen Armstead initially contacted the domestic relations office in regard to securing support from appellee Wilburt Dandridge, who appellant maintained was the father of her illegitimate child.[2] On July 7, 1970, appellant directed that the case be dropped, but on August 4, 1970, she asked that it be reinstated. Both appellant and appellee appeared for a conference on August 26, 1970, at which time appellee orally agreed to pay $10.00 per week for support of the child. No court order was entered because no complaint for support had yet been filed.

Appellant and appellee again met before a domestic relations counsellor on September 17, 1970. A formal complaint for support under the Civil Procedural Support Law[3] was then filed, and appellee signed a consent support order requiring him to provide $10.00 weekly for Ronny Armstead's support. At the bottom of the consent order appellee

1. Much of the information comes from the file of the Domestic Relations Counselling Office of the Family Division of the Allegheny County Court of Common Pleas, which was admitted into evidence in the proceeding below.

2. The child, Ronny Armstead, was born March 14, 1970.

3. Act of July 13, 1953, P. L. 431, § 1 (62 P. S. § 2043.31) *et seq., as amended.*

signed his name after the words "I admidt (sic) parontage (sic) of child." The order was later signed by Judge Guffey in camera.

On September 24, 1971, a second support order was entered, again by consent of the parties, increasing the support obligation to $60.00 monthly. Appellee made sporadic support payments until March of 1972. Appellant made no further attempt to enforce the support orders until April of 1976, although she testified that at some point she assigned her support payments to the Department of Public Assistance as she was receiving a welfare grant. On April 19, 1976, appellant sought a rule to show cause why appellee should not be held in contempt for failure to comply with the support orders. Appellee cross-petitioned to vacate the orders and to cancel the accumulated arrearages. Hearings were held before Judge Ross of the Family Division on May 26 and June 9, 1976, and by order dated September 24, 1976, the court dismissed appellant's rule seeking enforcement and granted appellee's petition to vacate the orders and cancel the arrearages. The court's disposition was based on its finding that appellant had not waived his right to a criminal determination of paternity.

There are several cases which are basic to an understanding of the law on this topic. In *Commonwealth v. Dillworth*, 431 Pa. 479, 246 A.2d 859 (1968), the appellant challenged an order of support entered under the Civil Procedural Support Law. Although Dillworth had demanded a jury trial, the finding of paternity was made and the support obligation was set by a judge sitting alone. Our supreme court held that the 1963 amendment to the Civil Procedural Support Law,[4] relied upon by the trial court, was not intended to abrogate previous requirements in this area by authorizing a determination of paternity by a judge sitting without a jury.

4. Act of August 14, 1963, P. L. 872, § 1 (62 P. S. §§ 2043.32, 2043.35). This amendment brought illegitimate children, not previously protected by the the statute, within its purview.

"Prior to the adoption of this amendment, an order for support of an illegitimate child could only be entered after a determination of paternity had been established by criminal proceedings under the Penal Code of June 24, 1939. This determination could be made either in a prosecution for fornication and bastardy under § 506 of the Code, 18 P.S. § 4506, or in a prosecution for willful neglect to support a child born out of lawful wedlock under § 732 of the Code, 18 P.S. § 4732." 431 Pa. at 483, 246 A.2d at 861.

The court rejected the contention that its ruling left the amendment void of effect, however, interpreting the added provisions as " . . . permitting the entry of a support order in the case of 'a child born out of lawful wedlock' without a prior criminal proceeding when paternity is not disputed. (footnote omitted). Thus, if the putative father is willing to support his child but simply disputes the amount he is required to pay, the order can be entered without compelling him to suffer the stigma of pleading guilty to a criminal offense." 431 Pa. at 484–85, 246 A.2d at 862.

The utility of civil proceedings in this area was expanded in *Commonwealth v. Jacobs,* 220 Pa.Super. 31, 279 A.2d 251 (1971). The court there interpreted *Dillworth, supra,* as holding that "the protections inherent in a criminal trial could not be abrogated by the court and that the putative father was entitled to a trial by jury where he insisted upon enforcing that right." *Commonwealth v. Jacobs, supra* at 36, 279 A.2d at 253. This reasoning did not preclude a civil determination of paternity under all circumstances, however, for as the court stated: " . . . *Dillworth* should not be applied to prohibit civil jurisdiction unless the putative father has demanded trial by jury." *Commonwealth v. Jacobs, supra,* 220 Pa.Super. at 36, 279 A.2d at 253. The court ruled that a putative father who denied paternity can choose a civil determination of the issue, thus avoiding the stigma of a criminal proceeding, but that one who exercised such a choice thereby waived his right to a jury trial and to the ancillary criminal protections, such as the requirement that his guilt be proved beyond a reasonable doubt.

*Commonwealth ex rel. Kolodziejski v. Tancredi,* 222 Pa. Super. 436, 295 A.2d 174 (1972), provides the next link in our analysis of the case law. In that case, a complaint for support of an illegitimate child was filed against the putative father under the Civil Procedural Support Law. At a hearing on the complaint, Tancredi (the putative father) denied paternity and the court ordered that he be held for court on charges of fornication, bastardy and neglect to support a child born out of wedlock. Bail was set and Tancredi signed his own recognizance bond. Subsequently an attempt was made to transform the civil complaint into a criminal complaint by assigning it a new number and changing the designated branch from "Domestic Relations" to "Women's Division". The defendant's petition to have the charges dismissed was initially granted, but the order of dismissal was later rescinded on the basis of a hearing on a petition filed by the complainant's private attorney.

On appeal, this court held that no criminal proceeding had ever been initiated against Tancredi, and that "[o]ur Supreme Court has specifically held that the Rules of Criminal Procedure in this regard must be followed 'precisely'. (citation omitted)." 222 Pa.Super. at 442, 295 A.2d at 177.[5] The court further ruled that the statute of limitations had run, barring any subsequent criminal prosecution of the appellant.

The court below explained its holding as follows:

5. In its opinion, the lower court cites *Tancredi* for the proposition that "the civil proceeding could not be used to decide paternity without a waiver in open court: *Commonwealth ex rel. Kolodiejski (sic) v. Tancredi,* supra, 442 [443]." (Lower Ct. Opn. at 9). This citation is extremely misleading. In *Tancredi* the Commonwealth argued that the appellant had waived any preliminary defects in the proceedings by virtue of his waiver of presentment to the grand jury of the indictments against him. This court held that even assuming, *arguendo,* that certain Rules of Criminal Procedure could be waived, the appellant's waiver of presentment was not valid because, *inter alia,* "it was not signed in open court." 222 Pa.Super. at 443, 295 A.2d at 178. The court clearly was speaking to the waiver of presentment in any criminal case, not to the waiver of a criminal determination of paternity.

"Defendant Dandridge never appeared with counsel in open court to demand a non-jury civil adjudication of paternity nor did he in open court with counsel admit paternity and waive a criminal jury trial and criminal protections. He merely endorsed such a statement on his consent order in the prothonotary's office without having first been told that he had a right to a criminal jury trial as to paternity and to certain protections.

Tancredi constrains us to hold that defendant's written waiver or admission, not having been made in open court with counsel nor after having been informed as to alternate choices nor as to his criminal rights and protections, was not sufficient to constitute an intelligent waiver of a criminal jury trial of paternity." (Lower Court Opn. at 10).

The lower court erred in its reliance on Tancredi as support for its disposition. The case stands for the principle that a putative father who denies paternity is entitled to strict compliance with the rules of criminal procedure if he is prosecuted. It is not apposite to the instant case, where appellant admitted paternity, agreed to the entry of a support order and five and a half years later sought to recant his admission and contest the issue. This distinction is apparent in Tancredi, where the court notes that "[i]f a defendant does not contest paternity, however, he may be ordered to pay support under The Civil Procedural Support Law without a prior criminal conviction on the charges of fornication and bastardy." 222 Pa.Super. at 440, 295 A.2d at 176.

▮▮▮ This reasoning receives further support from the decision in Commonwealth ex rel. Yentzer v. Carpenter, 240 Pa.Super. 202, 362 A.2d 1101 (1976). In Yentzer, a complaint was filed against the putative father under the Civil Procedural Support Law. The case was tried before a jury, and the defendant asked the court to charge that paternity had to be proved beyond a reasonable doubt. This request was rejected, and the jury was instructed that proof had only to be by a preponderance of the evidence. This court, relying

on *Commonwealth v. Dillworth, supra* and *Commonwealth v. Jacobs, supra,* reversed, holding that "the putative father cannot be deprived of a criminal trial on the issue of paternity absent an admission or express waiver . . .."[6] *Commonwealth ex rel. Yentzer v. Carpenter, supra,* 240 Pa.Super. at 206, 362 A.2d at 1103 (emphasis added). The defendant's request for an instruction on the criminal burden of proof indicated that he had not waived his right to a criminal determination. The court's language also illustrates, however, that an admission of paternity provides an independent basis for jurisdiction to enter a support order in a civil proceeding. An admission does not have to be preceded or accompanied by a waiver of the individual's right to a criminal determination of paternity because it establishes the primary jurisdictional fact and obviates further inquiry into that issue. Clearly a waiver of the right to a criminal determination of paternity is applicable *only* where paternity is denied.

 We have determined that the law has distinguished between cases where paternity is disputed, whether in a criminal or civil context, and those where it is admitted. We will next consider whether the lower court was justified in its extension of criminal waiver principles to this case. The lower court reasoned that since appellee would have had the right to a criminal jury trial on the issue of paternity *if he had disputed that issue,* appellee's decision to admit paternity and forego his criminal rights had to be voluntary and intelligent. Because the record and the hearing testimony did not demonstrate that appellee had been informed of his "rights" prior to his admission and consent to a support order, the court found these actions to be legally deficient.

**6.** This writer dissented from the majority in *Yentzer* as to the proper nature of paternity determination proceedings held under the Civil Procedural Support Law, and on whether such an action was barred by the expiration of the criminal statute of limitations. I maintain the position on those matters which I expressed therein. *See Commonwealth ex rel. Yentzer v. Carpenter,* 240 Pa.Super. 202, 362 A.2d 1101 (1976) (Dissenting Opinion By Price, J.).

This divergence of opinion has *no* relevance to the instant case, however, where we are concerned with an *admission* of paternity.

One of the seminal cases involving the requirement that waiver of criminal rights be intelligent and voluntary is *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965). In *Miranda* the United States Supreme Court ruled that the prosecution may not use statements obtained by law enforcement officials after a person has been taken into custody or otherwise significantly deprived of his personal freedom unless the accused has been properly warned of his right against self-incrimination. This conception of waiver as "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1937), has since been applied to many different criminal rights and protections. These principles, however, are inapposite to the instant case. No criminal proceeding had been brought against appellee at the time the parties met in the domestic relations office. In fact, no criminal complaint has ever been filed. Appellee's written admission of paternity was made in a *civil* case before a domestic relations counselor at a meeting where appellee appeared voluntarily. The factors which required that the defendant in *Miranda* be apprised of his rights are uniformly absent here. Appellee was not the focus of a criminal investigation, his personal liberty was not restrained in any way and the record indicates that no deceptive or coercive tactics were employed to secure his admission. We can discern no reason to impose criminal waiver requirements and demand *Miranda*-type warnings in this situation.

■ There are several bases upon which the court below could have refused to vacate the support order against appellee. First is the fact that appellee signed two consent orders agreeing to pay specified amounts for the support of appellant's child. On the first of those orders appellee's signature appears twice, once beneath the signature of appellant, and a second time beneath the words "I admidt (sic) parontage (sic) of child." The written acknowledgement of paternity on the first order is actually unnecessary to the decision of this case because a support order necessarily

determines the issue of paternity. To challenge this determination the aggrieved party must appeal directly from the order. No appeal was taken from either of the support orders herein.

In *Commonwealth ex rel. Nedzwecky v. Nedzwecky,* 203 Pa.Super. 179, 199 A.2d 490 (1964), the appellant-husband sought to compel a blood test to determine the paternity of a child who had been one of the subjects of a prior support order entered against him. The Uniform Act on Blood Tests to Determine Paternity,[7] enacted subsequent to the entry of the initial order, provided for the testing of children born during wedlock, a procedure not available under the prior law. The court stated:

"It is a complete answer to appellant's contention to point out that the enactment of the Act of 1961 did not and could not alter the prior adjudication of the court below, implicit in the entry of the original support order, that appellant was the father of William, Jr. In the absence of an appeal from that order, the fact of appellant's paternity of William, Jr. became established as a matter of law. A relevant fact necessarily determined as a prerequisite to the entry of an original support order may not, under the doctrine of res judicata, be challenged or put at issue in any subsequent proceeding. (citation omitted)." 203 Pa. Super. at 182, 199 A.2d at 491.

The effect of the support orders in this case is not altered by the fact that they were entered by consent rather than as the result of an adversary hearing.

"Although a consent decree is not a legal determination by the court of the matters in controversy, *Universal Builders Supply, Inc. v. Shaler Highlands Corp.,* 405 Pa. 259, 265, 175 A.2d 58 (1961), it binds *the parties* with the same force and effect as if a final decree has been rendered after a full hearing upon the merits, *Baran et al. v. Baran,* 166 Pa.Super. 532, 537, 72 A.2d 623 (1950). The fact that without the consent of the parties the court might not have rendered the judgment does not affect its

7. Act of July 13, 1961, P. L. 587, § 1 (28 P. S. § 307.1) *et seq.*

effect as res judicata. Annot. 2 A.L.R.2d 514, 528 (1948). Were this not so, a consent decree would have little value." *Zampetti v. Cavanaugh,* 406 Pa. 259, 265, 176 A.2d 906, 909 (1962); *accord, Bearoff v. Bearoff Brothers, Inc.,* 458 Pa. 494, 327 A.2d 72 (1974); *Keystone Building Corp. v. Lincoln Savings & Loan Association,* 233 Pa.Super. 47, 335 A.2d 817 (1975).

The finality of a consent decree was discussed in *Baran v. Baran,* 166 Pa.Super. 532, 537, 72 A.2d 623, 625 (1950), where the court stated:

"It is of no moment that the consent decree was entered without a hearing. . . . The consent decree derived its efficacy from the agreement of the parties and the approval of the chancellor. It bound the parties with the same force and effect as if a final decree had been rendered after a full hearing upon the merits. A decree entered by consent of the parties is so conclusive that it will be reviewed only on a showing that an objecting party's consent was obtained by fraud or that it was based upon a mutual mistake. 19 Am.Jur. Equity, § 407." *Accord, International Organization Masters, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America, Inc.,* 456 Pa. 436, 318 A.2d 918 (1974).

Appellee's cross-petition did not allege any fraud or mutual mistake which, if proved, might have justified a review of facts established by the consent orders. At the hearing on the petitions, appellee testified that he had been aware that the purpose of the meeting he attended with appellant and the domestic relations counselor was to secure support for appellant's child, and that he had known appellant was alleging that he was the child's father. Appellee maintained that although he had graduated from high school and was able to read, he read none of the papers that he signed in the counselor's office. He further stated that he was never asked if he was the child's father and that he never made an admission of that fact. Appellee's explanation for his conduct was that he thought that if he agreed to pay appellant some money she would soon let the matter drop. Nothing in

appellant's petition or his testimony, accepting the latter as true, indicated anything more than his own negligent misapprehension of the significance of his actions.

It should be noted that appellee never denied, in his petition or his testimony, that he was the father of appellant's child. The only theory upon which appellee sought relief from his support obligation was that his admission of paternity was not preceded by adequate warnings and, therefore, could not constitute a waiver of a criminal determination. We have determined that this claim has no merit, and appellee has argued no other basis upon which relief might be premised.[8]

The order of the court below is vacated. The order of September 24, 1971, is reinstated and the case is remanded for further proceedings consistent with this opinion.

JACOBS, President Judge, concurs in the result.

WATKINS, former President Judge, and VAN der VOORT, J., did not participate in the consideration or decision of this case.

---

**8.** We have not exhausted the possible lines of ratiocination upon which the result herein could be based. An estoppel analysis might also be applied. *See Commonwealth ex rel. Gonzalez v. Andreas,* 245 Pa.Super. 307, 369 A.2d 416 (1976); Uniform Parentage Act (9 U.L.A.) § 6(a)(2).