422 A.2d 1363

Dolores NORRIS, Appellant,

v.

Dale J. BECK.

Dolores NORRIS

v.

Dale J. BECK, Appellant.

Superior Court of Pennsylvania.

Argued March 12, 1980.

Filed Nov. 21, 1980.

1. Illegitimate Children ⊗═23

422

John B. Dunn, Allentown, for Norris, appellant in No. 401 and appellee in Nos. 352 and 1226.

William G. Sherr, Allentown, for Beck, appellee in No. 401 and appellant in Nos. 352 and 1226.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

BROSKY, Judge:

On January 2, 1980, the appeal by Dolores Norris in a neglect to support a bastard action (26 April Term, 1962) and the appeal of Dale J. Beck in a civil action were consolidated for the purpose of argument and joint consideration by this court.

In September of 1962, pursuant to a guilty plea to the charges of fornication and bastardy (18 P.S. 4506) and

neglect to support a bastard child (18 P.S. 4732), Dale J. Beck was ordered to pay support to his two minor twin children, David and Debra, born August 2, 1962, until they reached the age of sixteen (16) years.

During the course of this order, from 1962 until August of 1978, the order was occasionally modified depending on the prevailing circumstances, such that at the time of the children's sixteenth (16) birthday, the court ordered support was thirty ($30) dollars per week for the support of both children.

When the children reached the age of sixteen (16), their father, Dale J. Beck, on September 12, 1978, petitioned for a suspension of the support order.

In December of 1978, Dolores Norris filed a civil support action (1226 October Term, 1979) as provided in 42 Pa.C.S.A. 6701, et seq. Ms. Norris did this to protect her right to support for her children in the event the court would rule in favor of Dale J. Beck's petition to suspend the order (Lehigh County) at 26 April Term, 1962, now on appeal before this court (401 October Term, 1979).

On December 29, 1978, the lower court took testimony on Mr. Beck's petition to suspend the order in the case of neglect to support a bastard. On January 30, 1979, the court entered an order terminating the order of support as of August 2, 1978 because the children had reached the age of sixteen (16).

Also on January 30, 1979, based on both the petition of Dolores Norris in the civil action and the testimony of December 29, 1978 in the criminal action, the lower court ruled the children were still entitled to support (despite the suspension of the order for neglect to support a bastard (18 Pa.C.S.A.).[1]

1. Accordingly, the lower court ordered Mr. Beck to pay thirty ($30) dollars a week retroactive to August 2, 1978 plus the additional sum of five ($5) dollars a week on any accumulated arrears, costs of these proceedings and enter bond in his own recognizance in the sum of one thousand ($1,000) dollars.

On February 15, 1979, Mr. Beck appealed the lower court's ruling in the civil action. This appeal was mooted by the lower court's reconsideration order of February 16, 1979. On February 22, 1979, Ms. Norris filed a notice of appeal of the lower court's January 30, 1979 ruling in the neglect to support a bastard action (18 Pa.C.S.A. § 4323).

Thereafter, on March 23, 1979, the lower court took further testimony and reconsidered its January 30, 1979 order in the civil action and, on March 29, 1978, ordered that Mr. Beck pay thirty ($30) dollars a week plus five ($5) dollars a week in arrearages for the support of the children. The order was made retroactive to August 2, 1979, the children's sixteenth (16) birthday.[2]

This court must resolve two issues. The first involving the availability of support payments under the criminal act and the second concerning Mr. Beck's liability for support payments under the civil act.

## I. CRIMINAL ACT

The issue which this court must resolve first requires us to determine if Dolores Norris is entitled to receive support payments for her children beyond the age of sixteen, under the now repealed Act of June 24, 1939, P.L. 872, Section 323, as replaced by current 18 P.S. 4323 (June 6, 1973).

The purpose of this section is to impose upon the putative father the obligation to support his child born out of wedlock, thereby converting a moral duty of the father into a legal obligation to provide for the children's support and

2. Subsequently, on May 5, 1979, Mr. Beck filed a late appeal which was dismissed by this Honorable Court on May 16, 1979. A petition for allowance of appeal nunc pro tunc was granted June 4, 1979 and Mr. Beck appealed again on June 12, 1979.

In August of 1979, a supersedeas was granted by the lower court to allow support payments to be paid by Mr. Beck in the civil action to the Lehigh County Domestic Relations Collection Office. Also in August of 1979, Dolores Norris was granted leave to proceed in forma pauperis in her appeal in the neglect to support a bastard.

maintenance. *Commonwealth v. Pewatts*, 200 Pa.Super. 22, 186 A.2d 408 (1962).[3]

The criminal support act provided that payment of support would terminate when the children reached the age of sixteen (16) unless there were special circumstances, usually pertaining to disabilities, which would require payments to be made for no more than two (2) additional years. The only mention of any infirmity, disability or other unusual circumstance affecting Ms. Norris' children is that David needs special medication costing approximately thirty ($30) dollars a month.

On these facts, the lower court hearing the criminal action had no authority to extend support beyond the age of sixteen (16). We find there is no special circumstance to warrant the extension of support as required by statute.

When Dale J. Beck pleaded guilty to the paternity of the children of Dolores Norris, paternity became established as a matter of law. A relevant fact necessarily determined as a prerequisite to the entry of an original support order may not, under the doctrine of res judicata, be challenged or put at issue in any subsequent proceeding. *Commonwealth ex rel. Nedzwecky v. Nedzwecky*, 203 Pa.Super. 179, 199 A.2d 490 (1964); *Commonwealth ex rel. Palchinski v. Palchinski*, 253 Pa.Super. 171, 384 A.2d 1285 (1978).

## II. CIVIL ACT

The second issue which this court must decide is the determination of support, if any, Dolores Norris is entitled to receive for her children under the Support Act of 1978 (42 Pa.C.S.A. 6704).

Ms. Norris contends she was unaware of the need to file the civil action until Mr. Beck filed his petition for suspension. Accordingly, once Mr. Beck's desire to terminate the

---

**3.** The duty of a father to support his children is well nigh absolute. *Commonwealth ex rel. Mickey v. Mickey*, 220 Pa.Super. 39, 280 A.2d 417 (1971); *Commonwealth ex rel. Snively v. Snively*, 206 Pa.Super. 278, 212 A.2d 905 (1965).

order of nonsupport in the criminal action became known, Ms. Norris filed a civil support action. She filed on December 4, 1978 which was five (5) months, six (6) days after the effective date of the Support Act of 1978 [42 Pa.C.S.A. 6704(e)] which gave Ms. Norris, for the first time, the right to file a civil action.

The civil support act has created rights in persons. We hold today that those rights cannot be withheld from persons who only recently acquired these rights and who have not exercised them within the technical time constraints of the act. To make any other determination would require persons to adhere to a statute of limitations of which they had no notice. Ms. Norris certainly must be given two (2) years from the date of enactment of the support act in which to bring her action. Any other holding would deny the very purpose the legislature posed by creating an action for civil support.

Mr. Beck initially contends that this action is barred by the statute of limitations:

> (e) All actions commenced under this section shall be brought within six years of the birth of the child, except where the reputed father shall have *voluntarily contributed to the support of the child or shall have acknowledged in writing his paternity, in which case an action may be brought at any time within two years of any such contribution or acknowledgment by the reputed father.* 42 Pa.C.S.A. 6704, Official Note (e). (Emphasis added)

The questions then are twofold, first whether payments made by Beck under the nonsupport orders in the criminal case were made "voluntarily"; and, secondly, whether by acknowledging paternity in writing, his guilt to the charges of bastardy and neglect to support a bastard child in the criminal case, prevent the tolling of the statute of limitations in the civil action for support.

First, it is necessary to set forth a brief history of the law in this area. The Civil Procedural Support Law of 1953,[4]

4. Act of July 13, 1953, supra, Section 2; former 62 P.S. 2043.32.

relating to the "duty of support" did not include any reference to a child born out of wedlock. The only way to obtain support of an illegitimate child was in a criminal prosecution, either for bastardy[5] or willful failure to support an illegitimate child.[6] In 1963, after the statute was amended to include support for illegitimate children, the definition of "duty of support include(d) any duty of support imposed or imposable by law . . . prosecution for failure to support a child born out of lawful wedlock or otherwise."[7] The Supreme Court in *Commonwealth v. Dillworth*, 431 Pa. 479, 246 A.2d 859 (1968); the Superior Court in *Commonwealth v. Jacobs*, 220 Pa.Super. 31, 279 A.2d 251 (1971); and in *Yentzer v. Carpenter*, 240 Pa.Super. 202, 362 A.2d 1101 (1976), all determined there was no civil remedy for the support of a child born out of wedlock.

> "The case law (supra), however, provides that a criminal proceeding on the issue of paternity is mandatory absent an express waiver by the defendant. Thus, if the complainant proceeds civilly, and the father demands a jury trial and otherwise seeks to preserve the safeguards afforded by due process, the civil court is without jurisdiction to proceed. This is logical. If the complainant files a civil action, the putative father is powerless to demand that a criminal action be instituted. The most he can do is attempt to preserve his rights and thereby negate the civil suit . . . that absent an admission or express waiver, the better course from the complainant's standpoint is to file a criminal complaint . . .
>
> All rights of the complainant will then be preserved: if defendant desires a criminal determination, the case will

5. Act of June 24, 1939, P.L. 872, Section 506, as amended 18 P.S. 4506; repealed by the Act of December 6, 1972, P.L. 1482, No. 334, Section 5, effective June 6, 1973. Subsequent to repeal, several provisions of this act were held unconstitutional. *Commonwealth v. Staub*, 461 Pa. 486, 337 A.2d 258 (1975).

6. Act of June 24, 1939, P.L. 872, Section 732; former 18 P.S. Section 4732; superseded by the Act of December 6, 1972, P.L. 1482, No. 334, Section 1, 18 Pa.C.S. Section 4323, effective June 6, 1973.

7. Act of August 14, 1963, P.L. 872, Section 1; 62 P.S. 2043.32.

proceed on the paternity issue and the defendant will have all the safeguards inherent in a criminal trial: if the defendant requests that a civil hearing be held, he will have waived his criminal rights."

*Yentzer v. Carpenter,* supra, 240 Pa.Super. 208, 362 A.2d 1104.

The Act of 1953, July 13, P.L. 431, Section 2, 1963, August 14, P.L. 872, Section 1 (62 P.S. 2043.32)–"definitions"–defines duty of support as follows:

"Duty of support includes any duty of support imposed or imposable by law or by any court order, decree or judgment whether interlocutory or final, whether incidental to a proceeding for divorce, legal separation, separate maintenance, prosecution for failure to support a child born out of lawful wedlock or otherwise."

■ Thus, the order for support imposed in a criminal action for the prosecution for the failure to support the children is included in the Act of July 9, 1976, P.L. 586, No. 142, Section 6701, added 1978, April 28, P.L. 202, No. 53, Section 10(88) effective June 27, 1978 which act is a reenactment of the Act of July 13, 1953, (P.L. 431, No. 95), Section 3 (as amended), 62 P.S. § 2043.33.

The order for support of March 29, 1979 (civil action), is a continuation of the order of January 30, 1979 (criminal action) which is a continuation of the order of 26 April Term, 1962.

■ The appellant Beck contends payments made under the support order in the criminal case were not made "voluntarily" but were made under compulsion and external constraint. He argues the courts are empowered to compel performance of their orders by fine and/or imprisonment. However, we are not impressed with Mr. Beck's argument. The criminal support payments were ordered subsequent to Beck voluntarily pleading guilty and admitting paternity. He made those payments absent any constraint until the children reached the age of sixteen (16). He took no appeal. He recognized his parental obligation and voluntarily under-

took his responsibility. The court order merely provided a remedy to Ms. Norris in the event Mr. Beck stopped making payments. Mr. Beck, therefore, should not be allowed to claim after sixteen (16) years of making payments voluntarily, that they were forced.

The record indicates that Beck recognized his moral responsibility to support his children. From time to time, he sought the aid of the court to modify the amount of the support order. All of these things further lead us to conclude that Beck voluntarily paid the support order.

Thus, the fear of punishment which Beck speculatively now argues is merely a smoke screen to support his unsupported argument that his payments for support were not voluntary.

■ The payments were made pursuant to a written statement of guilt admitting paternity. The statute provides that where paternity is acknowledged in writing that "an action may be brought at any time within two years of any such acknowledgment by the reputed father", 42 Pa.C.S.A. 6704(e). There is ample evidence in the record to support Mr. Beck's admission of paternity.[8] As previously stated,

---

8. Page 35a:

"MR. STARK,* counsel for Dale J. Beck: Then I request a jury trial on that particular issue.

\* Mr. Stark's name was substituted for Mr. Dunn per stipulation for correction of record pursuant to Pa.R.A.P. 1926.

THE COURT: I thought that was determined. Wasn't there—that an F & B case?

MR. STARK: May it please the court, what was determined in 1962 was his liability with respect to those children up to the age of 16. No, that is the order which was entered by Judge—

THE COURT: You had a jury trial then?

MR. STARK: May it please the court, there was not a jury trial then; but there was an order entered by the court by Judge Henninger, providing he should support the children until such time as they arrive at the age of 16. Now, that's what the order is.

THE COURT: Now, you are confusing me. Was there a determination of paternity or wasn't there?

MR. STARK: There was a guilty plea.

THE COURT: A guilty plea?

MR. STARK: A guilty plea on September 24, 1962.

THE COURT: That will end right there.

Dolores Norris filed her action five months after her right to bring a civil support action was created. This is well within the two (2) year time period prescribed by the statute.

The lower court also considered the constitutional issue involved in this matter. The last paragraph of the lower court's opinion said:

"The U.S. Supreme Court has held that states may not treat illegitimate children differently from legitimate children without violating the equal protection clause of the Fourteenth Amendment. *Gomez v. Perez*, 409 U.S. 535 [, 93 S.Ct. 872, 35 L.Ed.2d 56] (1973). Had defendant's children been legitimate, he would have continued to be liable without cessation until they reached the age of majority. To allow defendant to escape from making payments simply because his children are illegitimate would work an invidious discrimination against those children in violation of the Constitution of the United States."

THE COURT: Go ahead, Mr. Dunn. You want to get on record the fact there are two children, and they are the two children determined by the paternity charge in which there was a guilty plea entered, is that correct."

Page 45a:

"MR. DUNN: . . . Mr. Beck was paying support up until July . . .
MR. STARK: It wasn't voluntary."

Page 46a:

"THE COURT: It's a very cute argument, isn't it? I think it would have no basis with this court anyway. Now, if the appellate court wants to buy that one, they may."

The lower court, in its opinion at page two quoted 42 Pa.C.S.A. 6704(e) and said:

"While a literal reading of this section might support defendant's (Dale J. Beck) position, a more rational interpretation is that this section does not bar the action. This complaint was not brought within six (6) years of the birth of the children because the fornication and bastardy proceeding, prosecuted by the complainant on her children's behalf, made such action unnecessary. Defendant has at all times been on notice that he is liable for the support of his children. This is not an instance where a father is suddenly charged for the support of his illegitimate children sixteen (16) years after the fact.

*Moreover, defendant has acknowledged his paternity in writing both at the time of his guilty plea and every month since when he has made the required support payments. Thus, this action is not barred by the statute of limitations.*" (Emphasis added)

The reasoning of the trial court is sound.[9] We share its holding on this issue.[10]

We affirm the decision of the lower court. However, we hereby modify the order of court of the 29th day of March, 1979, in the case at 3A, 1979 so that the order shall be retroactive to December 4, 1978, the date of the filing of the complaint as provided for in 42 Pa.C.S.A. 6706(a). We also modify the order of court of January 30, 1979 (criminal case 26 April Term, 1962) so that support for the children is suspended on the sixteenth (16) birthdate of the children, viz, the 2nd day of August, 1978, as set forth in 18 P.S. 4731.

SPAETH, and VAN der VOORT, JJ., concur in the result.

9. For further discussion see 6 FLR 2131 (January 1, 1980) and *State v. West*, 378 So.2d 1220 (Fla.1979).

10. Additionally, we note the discussion of the lower court and the questions raised by appellant have failed to comply with Rule 235 of the Rules of Civil Procedure providing "Notice to Attorney General" raising questions of constitutionality of statute.