472 A.2d 1128

**Helen M. CHRZANOWSKI, Appellant**

v.

**John J. CHRZANOWSKI.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1983.

Filed Feb. 17, 1984.

300

Edward Schellhammer, Johnstown, for appellant.

Mark Alan Gregg, Johnstown, for appellee.

Before BROSKY, McEWEN and BECK, JJ.

BECK, Judge:

Appellant Helen M. Chrzanowski appeals from an August 12, 1982 order of the Court of Common Pleas of Cambria County made pursuant to a proceeding under the Revised Uniform Reciprocal Enforcement of Support Act (RURE-SA), 42 Pa.C.S. §§ 6741–6780. The Cambria County Court's order granted appellee John J. Chrzanowski's petition for blood tests to determine the paternity of appellant's daughter, Marie Chrzanowski, and suspended an existing Virginia child support order pending completion of the blood tests. We vacate the order.

## HISTORY OF THE CASE

An outline of the complex factual and procedural history of this case is necessary to an understanding of the issues involved in this appeal. Appellant and appellee were married in 1948. They adopted a son, Michael, in 1965. From June 1966 through June 1967, appellee, a career Army officer, was stationed in Viet Nam. Marie was born to appellant on December 30, 1967, placing the probable date of conception during the period of appellee's absence from the country.

In 1968, appellant informed appellee that he was not Marie's father. Nevertheless, appellee continued to live in the marital home until the parties separated in 1971. Dur-

ing this time it appears that appellee supported Marie and raised her as if she were his child. In 1972, appellant obtained a support order from the Circuit Court of Prince George's County, Maryland (the state of the parties' residence at the time) for herself and the children. The order obligated appellee to pay $200 per month for Marie's support. The Maryland court considered evidence of nonpaternity, including both appellant's admissions and blood tests conducted pursuant to the proceedings which excluded paternity. However, the court found that the doctrine of laches prevented appellee from denying paternity or avoiding his support obligation, because he continued living with Marie and her mother for three years, supported Marie, and held her out as his child.

In 1974, appellee filed for divorce in Virginia (appellant had become a Virginia domiciliary). The Circuit Court of Fairfax County granted the divorce on October 1, 1974; the grounds were two years' separation without possibility of reconciliation. The final decree ordered appellee to pay $200 per month per child toward Michael's and Marie's support.[1] The Virginia court found, and stated in its decree, "that [appellee] and [appellant] are ... the parents of Marie Chrzanowski, born December 30, 1967."

Appellant filed a petition for modification of the support order in the Fairfax County court in 1976. Because appellee had moved to Cresson, Pennsylvania, the Virginia court transferred the petition to the Cambria County court for action under RURESA.[2] On March 23, 1977, after holding a hearing, the Cambria County court found the amount of the support award adequate, and also directed that a further hearing be held "to determine whether the original Order of July 28, 1972 in the Circuit Court for Prince George's County, Maryland, should be awarded full faith and credit" in view of evidence that appellee was not Marie's natural

1. Michael has reached the age of majority and his support is not at issue in these proceedings.

2. RURESA has also been enacted in Virginia. *See* Va.Code. §§ 20–88.-13—20–88.31.

father. No further adjudications were made until August 12, 1982, when the Cambria County court issued an order granting appellee's April 22, 1981 petition for blood tests and suspending all existing orders pending the blood tests. Helen Chrzanowski now appeals from this order.[3]

## THE FOCUS OF REVIEW

At the outset, we emphasize that the only foreign support order before this Court is the October 1, 1974 decree of the Circuit Court of Fairfax County, Virginia. The record reveals some confusion on this question in the proceedings below; both the parties and the lower court at times referred to the Maryland order as the one under scrutiny. This matter came before the Pennsylvania courts on a petition filed under the *Virginia* RURESA with accompanying testimony referring to the *Virginia* decree. If appellant had wished to enforce the Maryland order, she should have filed a RURESA petition in the appropriate Maryland court.

## THE APPLICABLE LAW

The ultimate issue in this appeal is whether appellee should be permitted to relitigate Marie's paternity in the face of a prior adjudication of the issue by the Virginia court and a course of conduct by appellee amounting to an assumption of parental obligations which appellant at this late date (the child is now sixteen) seeks to avoid.

■ We are guided in this inquiry by two principles. First, the United States Constitution, Art. IV, § 1, requires us to give "Full Faith and Credit to the public Acts, Records, and Judicial Proceedings of every other State." Secondly, the choice-of-law provision of RURESA, 42 Pa. C.S. § 6747, provides that:

Duties of support applicable under this subchapter are those imposed under the laws of any state where the obligor was present for the period during which support

---

**3.** This is an appealable order. *See Commonwealth ex rel. Weston v. Weston,* 201 Pa.Super. 554, 558, 193 A.2d 782, 783–84 (1963).

is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.

Since the petition sought modification, the law of Pennsylvania as the obligor's (appellee's) present domicile governs this action. *See also Commonwealth ex rel. Byrne v. Byrne,* 212 Pa.Super. 566, 243 A.2d 196 (1968) (Responding state's law applied in modification action).

## FULL FAITH AND CREDIT

■■■ The Virginia decree is presumptively valid in this jurisdiction; it constitutes "a conclusive adjudication of everything involved therein except the jurisdictional facts on which it is founded." *Stambaugh v. Stambaugh,* 458 Pa. 147, 151, 329 A.2d 483, 485 (1974) (quoting *Commonwealth ex rel. McVay v. McVay,* 383 Pa. 70, 73, 118 A.2d 144, 146 (1955)). However, the application of the Full Faith and Credit Clause to the child support provisions of the decree is limited to the extent that those provisions are modifiable and therefore lacking in the requisite finality. *Silverstein v. Silverstein,* 246 Pa.Super. 503, 371 A.2d 948 (1977). As discussed above, RURESA calls for the application of Pennsylvania law to this action. Therefore, we must accord full faith and credit to the Virginia court's determination of issues which would not be proper grounds for modification of the order in Pennsylvania. A support order may be modified on a showing of a material and substantial change in circumstances *since the entry of the prior order. Shank v. Shank,* 298 Pa.Super. 459, 444 A.2d 1274 (1982); *Lyle v. Lyle,* 248 Pa.Super. 458, 375 A.2d 187 (1977) (emphasis added). A modification proceeding cannot be used to relitigate issues adjudicated in making the prior order, because these are not *changed* circumstances. *Dunbar v. Dunbar,* 291 Pa.Super. 224, 435 A.2d 879 (1981). Paternity is such an issue. It is a circumstance which by its nature cannot change, and it is necessarily adjudicated in entering the initial support order. *Norris v. Beck,* 282 Pa.Super. 420, 422 A.2d 1363 (1980).

■ The only other possible grounds for not according full faith and credit to the Virginia decree are that the court lacked jurisdiction, *Barnes v. Buck,* 464 Pa. 357, 346 A.2d 778 (1975), or that the judgment was procured by fraud, *Rubinsky v. Kosh,* 296 Pa. 285, 145 A. 836 (1929). The jurisdiction of the Virginia court is beyond question; appellant was domiciled in Virginia at all times relevant to the 1974 proceedings. Appellee does make some very generalized allegations of fraud in his brief, but he points to no specific evidence that the 1974 decree of the Virginia court was fraudulently induced. Indeed, appended to appellant's brief is a document purporting to be appellee's divorce complaint before the Fairfax County court. In this complaint, appellee avers "That no children have been born of this marriage" (Appellant's Brief and Reproduced Record at R.50a). The Virginia court, therefore, conclusively decided the question of paternity in face of a statement by appellee that no children were born of the marriage. The record as a whole does not support a finding that the Virginia court was defrauded. Instead it reveals that the Virginia court had a full knowledge of the facts.

## ESTOPPEL

■ Having concluded that we must accord full faith and credit to the Virginia court's adjudication of paternity, we further hold that this creditable prior judgment bars appellee from relitigating the issue in Pennsylvania. "[T]he rule of collateral estoppel prevents relitigation of issues of fact or law actually litigated and determined by a valid and final judgment in the first action." *Lebeau v. Lebeau,* 258 Pa.Super. 519, 525, 393 A.2d 480 (1978). A support order is necessarily premised on the existence of a parental relationship giving rise to a duty to support. *See Norris v. Beck, supra; Armstead v. Dandridge,* 257 Pa.Super. 415, 390 A.2d 1305 (1978). The Fairfax County Circuit Court made a finding of paternity and awarded support, and appellee chose not to seek appellate relief in Virginia. He is therefore estopped from challenging that finding at this time.

*Armstead v. Dandridge, supra; Commonwealth ex rel. Palchinski v. Palchinski,* 253 Pa.Super. 171, 384 A.2d 1285 (1978).

 Appellee is further precluded from relitigating Marie's paternity by his long delay in raising the issue at all and by his acceptance and support of the child during that time. *See Commonwealth ex rel. Gonzalez v. Andreas,* 245 Pa.Super. 307, 369 A.2d 416 (1976); *Commonwealth ex rel. Weston v. Weston,* 201 Pa.Super. 554, 193 A.2d 782 (1963); *Commonwealth ex rel. Goldman v. Goldman,* 199 Pa.Super. 274, 184 A.2d 351 (1962). Appellee's *conduct* constitutes an assumption of parental duties toward Marie regardless of whatever verbal representations he may have made to Marie or to others in the course of his social and professional life.[4] This Court in the above cases found that parental relationships can be established constructively and that such relationships and their concomitant duties merit judicial recognition and enforcement. The policy behind this rule was best expressed in *Gonzalez:*

> Absent any overriding equities in favor of the putative father, such as fraud, the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized. Relying upon the representation of the parental relationship, a child naturally and normally extends his love and affection to the putative parent. The representation of parentage inevitably obscures the identity and whereabouts of the natural father, so that the child will be denied the love, affection and support of the natural father. As time wears on, the fiction of parentage reduces the likelihood that the child will ever have the opportunity of knowing or receiving the love of his natural father. While the law cannot prohibit the putative father from informing the child of their true relationship, it can pro-

---

4. It should be noted that, at least according to appellant, appellee made regular payments through 1982 in compliance with the very support orders which he now contests after a long delay, thereby indicating his acceptance of a financial obligation towards Marie after the breakup of his marriage. Appellant's Brief at 7.

hibit him from employing the sanctions of the law to avoid the obligations which their assumed relationship would otherwise impose.

*Commonwealth ex rel. Gonzalez v. Andreas*, 245 Pa.Super. at 312, 390 A.2d at 419 (1976).

We recognize that appellee likely acted as he did out of a desire to keep the family together despite the circumstances of Marie's birth and that after three years he was disappointed in that expectation. He probably was unaware at that time that his failure to disclaim paternity formally would have lasting legal significance. Nevertheless, we cannot permit appellee to victimize the child by making his willingness to support contingent on the state of his relationship with her mother. We further note that appellant would be severely prejudiced if appellee is now allowed to avoid his support obligation, because it is too late for appellant to proceed against any other putative father for support.

## CONCLUSION

We have determined that appellee is not entitled to relitigate the question of Marie's paternity. Therefore, we vacate the August 12, 1982 order of the Court of Common Pleas of Cambria County. Since that order suspended all existing orders pending blood grouping tests, the effect of its vacation is to reinstate the Virginia support order in full and the March 23, 1977 order of the Cambria County court insofar as that order found no need for an increase in support. Therefore, a remand is not necessary at this time. Our decision is of course without prejudice to appellant's right to re-petition the court below for modification of the support order based on changed circumstances arising since the entry of the March 23, 1977 order.

McEWEN, J., filed concurring statement.

McEWEN, Judge, concurring:

I concur in the result of the opinion of the majority for the reason that appellant is estopped from challenging his responsibility for the support of the child.