548 A.2d 294

**Denise M. SCHULTZ, Appellee,**

v.

**Martin P. CONNELLY, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 30, 1988.

Filed Oct. 4, 1988.

Nicholas J. Caniglia, Wayne, for appellant.

Robyn E. Schwartz, Assistant District Attorney, Philadelphia, for appellee.

Before CAVANAUGH, BROSKY and MONTEMURO, JJ.

MONTEMURO, Judge:

Appellant Martin P. Connelly challenges a December 16, 1987 Order of the Philadelphia County Court of Common Pleas that denied his petition to vacate a support order for James Connelly, who was born to appellee Denise Schultz on January 5, 1980. We affirm.

The relevant facts of this case, as found by the trial court and amply supported by the record, are as follows:

> [T]he parties started living together in 1971. The parties decided to have a child, but they discovered that the [appellant] was sterile. The parties agreed that [appellee] should begin having sexual relations with their third floor tenant, James Jackson.
>
> As a result of this relationship, the child James was born on January 5, 1980. [Appellant] held himself out as the child's father and supported the child and [appellee] until the parties separated in the latter part of 1980.
>
> On November 10, 1980, the parties agreed to the entry of a support order for the child before a Domestic Relations Officer.[1]

Trial Court Opinion at 1–2.[2]  Appellant complied with the

---

1. The support order in question provided in pertinent part that:
    > [on] this 12 day of November, 1980, upon presentation of the foregoing Agreement [for Order of Support], it is hereby ordered that [appellant] pay $40.00 per week for the support of one minor child, James, effective November 20, 1980.

    The wording of both the Agreement and the Order was virtually identical. In addition, both the Agreement and Order provided that appellant would pay certain utility bills at the residence shared by appellee and the child but that, on October 1, 1981, appellant would cease to pay the utility bills and would contribute a flat $150.00 per month for the support of the child only.

2. At the hearing on this matter, appellee maintained that, prior to the birth of the child, the parties had entered into a common law marriage. N.T., September 16, 1987, at 23. However, in 1981, appellant filed a declaratory judgment action in the Philadelphia County Court of Common Pleas, *Connelly v. Schultz* (No. 1793, November Term, 1981), seeking a declaration that the parties had never been married pursuant to 23 Pa.S. § 206. A default judgment was entered against

support order until 1985.[3]  On April 17, 1986, appellant filed a petition to vacate support.  He alleged that (1) he was not the father of James Connelly; (2) the parties had agreed to terminate the support when the child reached the age of six; (3) he was not aware of the consequences of agreeing to the 1980 support order;  and (4) he agreed to the support order under duress and through fraud perpetrated by appellee. The trial court denied appellant's petition to vacate, and this appeal followed.

Appellant raises the following three questions for our review:

1. Is appellant equitably estopped from denying paternity?

2. Does the doctrine of res judicata bar the court from vacating the child support order?

3. Is there a change in appellant's circumstances that warrants vacating the child support order?

We affirm.

Because of our disposition of the second question presented, we need not address the first question and determine whether appellant is equitably estopped from denying paternity.  We therefore turn to the second question and find that appellant is collaterally estopped from denying paternity.  Appellant argues that the 1980 child support order should not now bar him from raising the issue of paternity.

appellee.  On March 30, 1982, the court issued a decree declaring that the parties had never been married.

**3.** A detailed history of litigation concerning the support order follows. The order became effective on November 20, 1980.  In 1983, appellant filed a petition to modify the order and requested that the required payment be reduced to $50.00 per month.  The court denied the petition.  In February 1986, a petition for contempt was filed against appellant for noncompliance with the support order.  At the hearing on the petition, appellant raised for the first time the issue of paternity. *See generally* N.T., April 17, 1986.  The court refused to hear any testimony on the paternity issue and instead directed appellant to pay monthly the already-ordered $150.00 plus $20.00 in arrears.  In February 1987, appellant filed a petition for blood tests.  At the hearing on the petition, the request for the blood test became moot because appellee admitted that appellant was not the biological father of the child.  N.T., September 16, 1987, at 28.  Thereafter, appellant filed the petition to vacate the support order that is now at issue.

He argues that the order cannot be given effect because the order (1) was the result of collusion between him and appellee in representing to the Domestic Relations Officer that he was the father of the child; (2) was a product of fraud perpetrated by appellee upon appellant because appellee threatened to kill the child if appellant did not agree to the order and because both parties orally agreed that the order would have effect only for six years; (3) was consented to by him without benefit of counsel so that he was unaware of the consequences of his actions; and (4) was entered into without adequate opportunity afforded to him to litigate the issue of paternity. We find no merit in any of these arguments.

█ Because appellant did not appeal directly from the support order entered in 1980 and there raise the issue of paternity, he is now collaterally estopped from denying paternity.[4]

> " '[A] plea of collateral estoppel is valid if, 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party ... to the prior adjudication, and 4) the party against whom it is asserted has had a

---

**4.** Although appellant speaks of and many cases refer to the "res judicata" effect of support orders concerning the issue of paternity, technically it is the operation of the doctrine of collateral estoppel that bars appellant from relitigating the issue. *See Commonwealth ex rel. Gonzalez v. Andreas,* 245 Pa.Super. 307, 315, 369 A.2d 416, 420 (1976) (Spaeth, J., concurring) (citing *In re Adoption of Robert Dale Young,* 469 Pa. 141, 152–53, 364 A.2d 1307, 1313 (1976)) ("collateral estoppel," not "res judicata," is the "more correct term"). The doctrine of res judicata "holds that 'an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.' " *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa.Super. 225, 232, 464 A.2d 1313, 1316 (1983). "The doctrine of collateral estoppel is a broader concept than res judicata. It operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." *Id.,* 318 Pa.Superior Ct. at 236, 464 A.2d at 1318.

full and fair opportunity to litigate the issue in ... question in a prior action.' "

*Day v. Volkswagenwerk Aktiengesellschaft*, 318 Pa.Super. 225, 237, 464 A.2d 1313, 1319 (1983) (quoting *In re Estate of R.L.L.*, 487 Pa. 223, 228 n. 8, 409 A.2d 321, 323 n. 8 (1979), *quoting Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975)). All elements needed for the application of the doctrine of collateral estoppel are present in the instant case.

First, in *Shindel v. Leedom*, 350 Pa.Super. 274, 504 A.2d 353 (1986), we stated that the entry of a support order "necessarily determines the issue of paternity." *Id.*, 350 Pa.Superior Ct. at 278, 504 A.2d at 355. If no direct appeal is taken from the order, the paternity determination cannot be challenged and is established as a matter of law. *Id. See also Commonwealth ex rel. Nedzwecky v. Nedzwecky*, 203 Pa.Super. 179, 181–82, 199 A.2d 490, 491 (1964) (implicit in the entry of a child support order is a finding of paternity). *Accord Armstead v. Dandridge*, 257 Pa.Super. 415, 390 A.2d 1305 (1978); *Commonwealth ex rel. Palchinski v. Palchinski*, 253 Pa.Super. 171, 384 A.2d 1285 (1978).[5] The issue of paternity that is now being challenged is identical to the one that was decided at the time of the 1980 order. Second, even though support orders are modifiable due to a change in circumstances, the determination of paternity is a final decision of that issue on the merits.[6] Third, appellant was a party to the prior support order so the doctrine of collateral estoppel may be asserted against him.

Finally, despite appellant's protestations to the contrary, he had a full and fair opportunity to litigate the issue of paternity at the time the support order was entered in

5. Even if after the entry of a support order the putative father is subsequently excluded by blood test as the biological father, the putative father is precluded from challenging paternity. *Manze v. Manze*, 362 Pa.Super. 153, 523 A.2d 821 (1987).

6. Paternity is not a changed circumstance in a modification proceeding. *Chrzanowski v. Chrzanowski*, 325 Pa.Super. 298, 304, 472 A.2d 1128, 1131 (1984). "It is a circumstance which by its nature cannot change, and it is necessarily adjudicated in entering the initial support order. *Norris v. Beck*, 282 Pa.Super. 420, 422 A.2d 1363 (1980)." *Id.*

1980. We will not disturb a prior, final determination of an issue merely because a party does not take full advantage of an opportunity to litigate. Appellant argues that he was denied a full and fair opportunity to litigate because, although he entered into the order voluntarily, his consent was vitiated by the fact that he was uncounseled and operating under duress due to appellee's threat to kill the child if appellant did not agree to the support. Appellant claims further that he was "not cognizant of the nature and consequences of his actions" and believed that his obligation would be lifted after six years, as he and appellee had allegedly agreed. Brief of Appellant at 12.[7] First, that appellant was uncounseled at the time he agreed to the support order does not undermine the validity or weaken the effect of the order. In fact, neither party had counsel. N.T., April 17, 1986, at 6. When entering into a support order, an individual does not have a right to counsel. Second, while it is true that there is an exception to the general rule that a support order conclusively determines the paternity issue, and that exception exists where fraud or mutual mistake induces a party to enter into such an order, the trial court found that appellant failed to substantiate his claim that he was under duress due to appellee's alleged threat to kill the child if he did not agree to support. *See* Trial Court Opinion at 5. We agree. The only testimony concerning the alleged threat was provided by appellant, and it was insufficient to prove duress. *Cf. Carrier v. William Penn Broadcasting Co.*, 426 Pa. 427, 431, 233 A.2d 519, 521 (1967) (duress that excuses one from performing a contrac-

7. Appellant likens the 1980 support order entered by agreement of the parties to a consent decree. He asserts that consent decress are not determinative of an issue. Brief of Appellant at 12. We disagree. The Pennsylvania Supreme Court has stated that

[a]lthough a consent decree is not a legal determination by the court of the matters in controversy, it binds *the parties* with the same force and effect as if a final decree has been rendered after a full hearing on the merits. The fact that without the consent of the parties the court might not have rendered the judgment does not affect its effect as res judicata.

*Zampetti v. Cavanaugh*, 406 Pa. 259, 265, 176 A.2d 906, 909 (1962) (citations omitted, emphasis in the original).

tual obligation must be "sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness"). Appellant's testimony on the issue of duress is meager: "[Appellee] threatened to kill the child if I didn't agree to support, and she was overwrought, and because of her past history that I knew of her, it lent *some creedance* [sic], at least gave me a *little concern* that she might possibly act." N.T., September 16, 1987, at 9 (emphasis supplied). Moreover, appellant could have raised the issue of duress on appeal from the original order. *Cf. Adoption of Young, supra* 469 Pa. at 151–52, 364 A.2d at 1312–13 (that a party was motivated by a fear of losing custody of a child and therefore failed to challenge the paternity issue at an earlier proceeding does not make any less applicable the doctrine of collateral estoppel concerning the paternity issue). Finally, there is no evidence in the record to prove that the parties agreed that the support order would have effect for only six years. The order contains no such provision, is clear on its face and is unambiguous. Appellant has therefore failed to sustain his claim of fraud by appellee.[8]

■ Finally, we find no merit to appellant's assertion that there has been a change of circumstances warranting the vacating of the support order. Appellant knew he was not the biological father when he agreed to the support order.[9] And, as we stated above, there is no evidence of record to

8. We note that the parties had enough sophistication in fashioning their original agreement to provide that appellant would pay the utility bills for a limited term after the entry of the order. At the end of that time period, the ordered payment would be reduced to $150.00 per month for the support of the child only. Moreover, a party's ignorance concerning the legal consequences of not denying paternity at the earliest opportunity does not provide a sufficient reason to vacate a support order. *See Chrzanowski v. Chrzanowski,* 325 Pa.Super. 298, 307, 472 A.2d 1128, 1132 (1984) (support order would not be vacated even though appellant "was probably unaware at the time that his failure to disclaim paternity formally would have lasting legal significance").

9. Even if appellant had been unaware that he was not the biological father, he could not, after the entry of the support order, deny paternity. *See* footnote 5, *supra.*

support appellant's claim that the order was to remain in effect for only six years.

Following a thorough review of the entire record, we are convinced that appellant voluntarily and knowingly entered into the 1980 support order. He has presented no grounds upon which he may now disclaim his obligations.

ORDER AFFIRMED.