## Schwarz v. Frost

*Joseph T. Piscitello,* for plaintiff.
*Robert W. Lentz,* for defendants.

GORDON, *J.*, March 16, 1998—This is an action for legal malpractice and negligent infliction of emotional distress. The plaintiff, Janet Schwarz, engaged the defendant, Attorney Mark Frost, to represent her in an underinsured motorist automobile claim which occurred in 1985. The UIM claim was arbitrated in October 1990 from which the plaintiff received an award of approximately $82,000. In June 1994, the plaintiff filed suit against the defendant alleging that because of a sexual affair between the two of them during the time of his legal representation, he breached his fiduciary duty resulting in a lowered UIM award, and negligently inflicted emotional distress upon her which resulted in psychological and physical injuries.

At the close of discovery, the defendant moved for summary judgment asserting that the claim for the breach of a fiduciary duty was time-barred by the statute of limitations and that the plaintiff did not present evidence of facts for negligent infliction of emotional distress. This court agreed and granted the defendant's motion for summary judgment, from which the plaintiff has appealed.

Factually, Schwarz has been a victim of psychological problems since she was a teenager. She has been diagnosed with and treated for a major depressive disorder, chronic and recurrent with associated features of agitation, mild nonpsychotic paranoia, and intense anxiety disorder with somatic symptoms. She has been hospitalized on several occasions for depression. She has consistently taken psychotropic medications for the past 10 years and continues treatment approximately five times per month for her condition.

Frost represented Schwarz in three automobile accidents. The first was for an occurrence in 1984 which was settled without litigation. The second was an ac-

cident in 1985 from which the plaintiff won an arbitration award in December 1990, and the third was in September 1989 which was ultimately handled by another attorney.

In early 1989, prior to the UIM arbitration, Schwarz and Frost began a consensual sexual affair. Schwarz stated that she entered the affair because she respected and trusted Frost. From that affair, a child was born in September 1989. Schwarz initially hoped for interaction between Frost and his son, but Frost wanted neither involvement nor public acknowledgment because of his marriage and career.

During the October 1990 arbitration hearing for the UIM claim, the insurance company argued that Schwarz' physical and psychological injuries were not totally the result of the auto accident, but were partially the result of her personal and social situation. Schwarz believes the insurance company lowered her award on that basis and avers that Frost should have foreseen that his relationship with her would impact her psychological condition and lessen her award. Schwarz also avers that a sexual relationship between an attorney and his client is a conflict of interest and a breach of the attorney's fiduciary duty.

In June 1994, Schwarz filed this malpractice and personal injury claim alleging two counts:

"(1) *Negligent infliction of emotional distress.* The plaintiff avers that because of her vulnerable psychological state, the defendant took advantage of his position of trust when he began a sexual relationship with her. The relationship, which the plaintiff says existed off and on until August of 1992, was extremely harmful to her and because of it, she has suffered psychologically, physically, and financially.

"(2) *Breach of fiduciary duty.* The plaintiff avers that her UIM claim was discounted because her personal relationship with Frost aggravated her psychological injuries. Frost breached his fiduciary duty to place his client's interests above his own when he engaged in a sexual relationship with her. Were it not for the relationship between the two of them, her UIM claim would not have been reduced."

In reviewing the defendant's motion, we look first to the legal standard for summary judgment. It is well settled that the standard of review is that no genuine triable issue of fact exists and that the moving party is entitled to judgment as a matter of law. The court must examine the record in the light most favorable to the non-moving party and resolve all doubts in her favor. Pa.R.C.P. 1035(b); *Cosmas v. Bloomingdales Bros. Inc.,* 442 Pa. Super. 476, 660 A.2d 83 (1995); *Aetna Casualty and Surety Company v. Roe,* 437 Pa. Super. 414, 650 A.2d 94 (1994); *Accu-Weather Inc. v. Prospect Communications Inc.,* 435 Pa. Super. 93, 644 A.2d 1251 (1994); *Stidham v. Millvale Sportsmen's Club,* 421 Pa. Super. 548, 618 A.2d 945 (1992).

As to the two counts in the complaint, we will address Count Two, breach of duty, first and assume all facts stated by the plaintiff in her deposition, complaint, and affidavit, as well as the reports of her psychiatrists to be true.

## BREACH OF FIDUCIARY DUTY

The defendant in this case has asked this court to grant his motion for summary judgment because Count Two is barred by the statute of limitations. The plaintiff avers that the statute of limitations was tolled due to duress.

Specifically, the plaintiff alleges that from the beginning, the defendant insisted that their sexual affair remain secret. Frost was married, had children and was respected in the legal community and he did not want the relationship made public. When the child was born, Frost insisted that Schwarz not name him on the birth certificate.

Schwarz states that she wished to pursue a legal claim against Frost for his handling of the UIM claim and her emotional distress, but that from the time she became pregnant in February 1989, she did not assert her legal rights because of threats Frost made. She eventually confided in her psychiatrist that Frost was the father of her child and that she could not tell anyone because Frost had told her she would be "hurt."

From May 1989 until 1992, the relationship was sporadic and infrequent, with the last sexual encounter in August of 1992. In September 1992, Schwarz met a man whom she ultimately married. Schwarz stated that because of a stable and supportive relationship with her new husband, she felt secure enough to finally bring a cause of action against Frost.

Frost continued to provide Schwarz with minimum legal counsel after the 1990 arbitration award, including the preparation of a will and the settlement of her townhouse. Schwarz does not allege that any of the defendant's representations, other than the 1990 UIM claim, were handled negligently or involved a conflict of interest.

Therefore, the plaintiff's breach of contractual duty allegation is limited to the 1990 arbitration. Because the arbitration award check was issued on January 10, 1991, the claim would be time-barred after January 9, 1993, unless the statute was tolled. 42 Pa.C.S. §5524. The question this court had to resolve was whether

the plaintiff's assertions are sufficient to satisfy the elements of duress and thereby toll the statute of limitations.

The plaintiff avers that she did not bring her cause of action timely because of fear of what the defendant would do if she made their relationship and the birth of their child public.

There is very little case law in Pennsylvania that guides us on the issue of tolling of the statute of limitations by duress in legal malpractice cases, and none similar to these particular facts. In general, however, in contract cases, the state courts have defined duress as:

"[T]hat degree of restraint or danger, [whether] actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness. . . . The quality of firmness is assumed to exist in every person, . . . unless it appears that by reason of old age or other sufficient cause he is weak or infirm. . . . Where persons deal with each other on equal terms and at arm's length, there is a presumption that the person alleging duress possesses ordinary firmness. . . . Moreover, in the absence of threats of actual bodily harm there can be no duress where the contracting party is free to consult with counsel." See *Hamilton v. Hamilton,* 404 Pa. Super. 533, 536, 591 A.2d 720, 721-22 (1991) (citing *Carrier v. William Penn Broadcasting Company,* 426 Pa. 427, 431, 233 A.2d 519, 521, (1967)); *Adams v. Adams,* 414 Pa. Super. 634, 607 A.2d 1116 (1992), *alloc. denied,* 533 Pa. 617, 619 A.2d 699 (1993). See also, *Schultz v. Connelly,* 378 Pa. Super. 98, 548 A.2d 294 (1988).

In *Schultz, supra,* the appellant asked the court to overturn a child support agreement and order because he was not the natural father. The appellant stated that

he signed the agreement under duress when the mother threatened to kill the child. The court held that the appellant's evidence was meager and that duress must be "sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." *Id.* at 105, 548 A.2d at 297 (citing *Carrier v. William Penn Broadcasting Co.,* 426 Pa. 427, 431, 233 A.2d 519, 521 (1967)).

In order to determine if duress is present in the case sub judice, we must review the surrounding circumstances and actions of both the plaintiff and the defendant.

Schwarz proffers via her deposition testimony, interrogatories and affidavit that:

"When she informed Frost she was pregnant he became angry, and wanted her to get an abortion. On several occasions he told her she would be hurt or he would disappear and deprive the child of a father and education. (Schwarz affidavit 10/23/97.) When the child was born Frost insisted that he not be named as the father, but did provide some financial support. (Deposition 1/21/97 p. 46.) In 1991, Schwarz hired a private investigator to obtain Frost's financial records, and shortly thereafter hired an attorney to prepare a child support agreement. (Deposition 1/21/97 pp. 39-48.) Because Frost was not abiding by some of the terms of the agreement in 1992, Schwarz solicited an attorney friend of Frost's for resolution. She subsequently hired another attorney in 1993 to increase her support payments. (Deposition 1/21/97 pp. 65-72.) Although Frost remained married during this time and Schwarz was involved in two other relationships with other males, their sexual relationship continued sporadically from May 1989 until August 1992 when Schwarz met her current husband. (Deposition 1/21/97 pp. 62-64; interrogatory no. 33, 9/94.)"

The record of the relationship between them shows that from the time of the arbitration award until the filing of the complaint, Schwarz was not shy about retaining legal counsel. During her conversations regarding child support with each of the attorneys, she disclosed information pertaining to the birth of an out-of-wedlock child and, by implication, her affair with Frost.

The child support agreement was memorialized in a signed and notarized writing in 1991, stating that each party acknowledges the retaining of independent counsel and that each was free of persuasion, fraud, undue influence or physical and emotional duress. Schwarz sought legal counsel under her own volition, and the support agreement was drawn up by her attorney. Inherent in any formal legal contract is the notion that a breach can and will be resolved in a court of law. The plaintiff also stated that during the period from 1990 until 1992, although she discussed the information pertaining to the paternity of her child and formal support, she did not seek advice regarding the UIM claim and Frost's conflict of interest. Surprisingly, Schwarz continued to retain the defendant as her legal counsel as late as December 1993, after she and her current husband were married. Furthermore, despite the alleged threats of harm made by the defendant, the plaintiff gave deposition testimony that had she been asked about their relationship during the arbitration hearing, she would have testified truthfully. (Schwarz deposition 1/21/97 p. 180.)

The plaintiff must present evidence of duress sufficient to toll the statute before the substantive case will be presented to the jury. *Schultz v. Connelly, supra.* Reviewing the evidence in a light most favorable to the plaintiff and assuming arguendo the facts presented

by the plaintiff to be true and that the defendant told her that she would be harmed, based on the foregoing behavior, we do not find that the plaintiff's apprehension of bodily harm was sufficient in severity to overcome the mind of a person of ordinary firmness.

There is no doubt that the plaintiff suffers from a variety of mental illnesses. There is, however, no evidence that her mental malady was so great that she was unable to comprehend her circumstances or that she was unable to seek legal counsel on the matter. This is evident by the fact that she vigorously pursued her support issues against Frost with the assistance of her attorneys. See *Adams v. Adams,* 414 Pa. Super. 634, 607 A.2d 1116 (1992) (no duress found where plaintiff had access to legal counsel).

Because we find there is no duress, the statute of limitations began to run as of January 10, 1991 when the plaintiff was paid the amounts due, and was time-barred as of January 9, 1993.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Before reviewing the merits of the plaintiff's claim for negligent infliction of emotional distress, we must address the issue of the independent tort of emotional distress. Pennsylvania does not recognize an independent tort of negligent infliction of emotional distress. For a plaintiff to recover, his or her psychological distress must manifest a physical impact or injury in order to state a cause of action. The Pennsylvania courts have ruled that physical impact or injury includes headaches, shortness of breath, tightening of the muscles in the neck, back and chest, nightmares, uncontrollable shaking, upset stomach and hyperventilation. *Crivellaro v.*

*Pennsylvania Power and Light Company,* 341 Pa. Super. 173, 491 A.2d 207 (1985).

Schwarz has presented documentation of her physical harm to support her claim. Her medical records show treatment for headaches, nightmares, upset stomach, and intense tightening of muscles in her body producing severe pain. Because the requisite physical injury accompanies her emotional distress, this does not end our inquiry to determine if she has met her burden. We must move to the next level of analysis, *i.e.,* does she fall within the category of recognized claimants?

In *Armstrong v. Paoli Memorial Hospital,* 430 Pa. Super. 36, 633 A.2d 605 (1993), the Superior Court made it clear that Pennsylvania allows recovery for negligent infliction of emotional distress under two circumstances only, first, and most commonly, in cases in which there is liability to a bystander who suffers psychological and physical harm after witnessing injury to a close loved one. Pennsylvania uses the foreseeability test detailed in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). Because there is no third party, we can dismiss with the analysis of foreseeability associated with a bystander cause of action.

Secondly, Pennsylvania has, in a few cases, recognized a cause of action for negligent infliction of emotional distress when the harm is the result of a breach of an underlying contractual or fiduciary duty. Such a duty must rise to a higher level than that owed from a humanitarian basis as a general member of society. As noted in *Hoffman v. Sun Pipe Line Company,* 394 Pa. Super. 109, 575 A.2d 122 (1990), when we look at duty we are asking whether a defendant is under any obligation for the benefit of the plaintiff. "[D]uty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which

lead the law to say that the plaintiff is entitled to protection." *Id.* at 114, 575 A.2d at 125 (quoting Prosser and Keeton on the Law of Torts, §54 at 358 (5th ed. 1984)).

In Pennsylvania, a breach of a duty may allow recovery for emotional distress where a professional is negligent in the delivery of professional services such as in the cases of *Crivellaro v. Pennsylvania Power and Light, supra* (employee forced into inpatient drug rehab program with no drug dependency) and *Brown v. Philadelphia College of Osteopathic Medicine,* 449 Pa. Super. 667, 674 A.2d 1130 (1996) (hospital liable for emotional distress where mother given dead fetus).

Our research has provided no cases directly on point with the issue at hand, and this may be a case of first impression. Yet there is some guidance we can take from the analysis of *Crivellaro* and *Brown.* The first hurdle the plaintiff must overcome is that the defendant breached a contractual or fiduciary duty owed to her.

## PROFESSIONAL LIABILITY

We encourage laypersons to put their trust in attorneys when they have a legal matter, and we hold those attorneys responsible when they do not use due care in administering their professional services. They may be held civilly liable in tort for negligence or breach of contract; criminally liable for acts of fraud and misrepresentation; and subject to disciplinary action in accordance with the Rules of Professional Conduct promulgated by the Pennsylvania Supreme Court.

Former Mr. Justice Nelson of the United States Supreme Court commented on the relationship between an attorney and client thusly:

"There are few of the business relations of life involving a higher trust and confidence than those of attorney and client or, generally speaking, one more honorably and faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it." *Maritrans v. Pepper, Hamilton and Scheetz,* 529 Pa. 241, 253-54, 602 A.2d 1277, 1283 (1992), quoting *Stockton v. Ford,* 52 U.S. 232, 247 (1850).

This is as true today as it was in 1850. We agree with Justice Nelson and conclude that the defendant was less than honorable when he entered into a romantic relationship with the plaintiff during his representation of her. In order for Frost to be civilly liable, however, for negligent infliction of emotional distress, he must have been *negligent* in the administration of a duty owed. Periodically, from 1984 until 1993, Frost was Schwarz' counsel for various matters. During those times of representation, he had a contractual and fiduciary duty to her. Whether he breached his duty will be determined by the nature of the duty owed to the plaintiff.

As her attorney, Frost owed the plaintiff a contractual duty to exercise on her behalf the knowledge, skill and ability ordinarily possessed and employed by members of the legal profession similarly situated and to utilize reasonable care and prudence in connection with his responsibilities. *Gautam v. DeLuca,* 521 A.2d 1343 (N.J. Super. 1987). He also owed her a fiduciary duty which required him to act in a manner not contrary

to or in conflict with the professional interests of his client.

A breach of a legal duty is another way of stating a cause of action for legal malpractice. As noted above, our research uncovered no case law on point and so we reviewed appellate cases on malpractice under other circumstances. Those cases show that in order to be liable for legal malpractice, the plaintiff must show three essential elements: (1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge, or acting contrary to the client's professional interests; and (3) that such negligence was the proximate cause of damage to the plaintiff. *White v. Kreithen,* 435 Pa. Super. 115, 644 A.2d 1262 (1994); *McPeake v. Cannon,* 381 Pa. Super. 227, 553 A.2d 439 (1989).

The current complaint alleges that the defendant negligently inflicted emotional distress upon the plaintiff by (1) engaging in sexual contact after her release from the psychiatric unit at the Hospital of the University of Pennsylvania; (2) repeated physical [sexual] contact with the plaintiff which was harmful to her psychiatric condition; (3) failure to comport with the standard of care of a lawyer via carelessness and recklessness, negligence as a matter of law, and exploitation.

We can dispense with the negligent legal representation claim. The only question as to whether the defendant was negligent in the performance of his contractual duties relates to the UIM arbitration award and is not decided here on the merits. As discussed above, this court granted a motion for summary judgment as to that count based on the statute of limitations. The plaintiff does not claim in her complaint that other than the UIM automobile claim, Frost breached any of his contractual duties to her.

Therefore, the plaintiff's remaining claim is that the defendant continued to have a consensual sexual relationship with her and that the affair resulted in emotional distress and aggravation of her psychiatric condition. Does the attorney have a fiduciary duty to protect his client from psychological harm? We believe not.

In *McPeake,* a criminal defendant jumped from a window after a jury found him guilty. His estate filed a wrongful death suit alleging that it was the attorney's legal malpractice that caused the suicide because the attorney knew of the decedent's emotional problems and prior suicidal tendencies. The decedent's estate alleged that decedent's actions were foreseeable and therefore the attorney was liable. The court had to answer whether an attorney's duty extended to protecting a client from his own suicidal tendencies. The answer was that it does not, and thus, proximate causation could not be established as a matter of law. The Superior Court ruled that suicide is so extraordinary an independent intervening act that it cannot be reasonably foreseeable and an attorney is not responsible for the suicidal acts of a client.

The court stated that attorneys do not possess the professional expertise similar to that of mental health institutions or doctors and that the connection between the practice of law and the decedent's harm was too attenuated to impose liability. Presently, we must determine whether that holding also applies to other manifestations of psychological or emotional weaknesses. Although the Pennsylvania courts have not answered that question, other jurisdictions have responded to this issue. For example, in the New Jersey case of *Gautam v. DeLuca, supra,* the court addressed whether damages for emotional distress were recoverable in a legal malpractice action. The plaintiffs in *Gautam* sued because

the attorney who handled their original case did not do so with due care towards them, and as a result they developed various psychological and physical problems including back pains, insomnia, constant headaches and bladder control problems.

The New Jersey court stated that emotional distress damages should not be awarded in legal malpractice cases in the absence of egregious or extraordinary circumstances. The court reasoned that whether viewed in the context of proximate cause or as a matter of public policy, the judicial system is not always the answer for life's disappointments. "Aggravation, annoyance and frustration, however real, constitute unfortunate products of daily living. Damages for idiosyncratic psychiatric reactions should not be permitted." *Id.* at 1349. The court went on to say that it readily acknowledged that mental and emotional distress is often just as real as physical pain. As a practical matter, however, legal responsibility must be limited to those causes so significantly connected with the result that imposing liability is justified.

Schwarz' complaint in the case at hand alleges that Frost breached his fiduciary duty of trust and due care by engaging her in a sexual relationship with full knowledge of her emotional and psychological state. For a breach of a fiduciary duty, there must be an act contrary to the client's *professional* interest, such as representing a competitor, divulging confidential information, misuse of funds, or usurping a partnership opportunity. *Maritrans v. Pepper, Hamilton and Scheetz, supra.*

*McPeake* deals with a criminal defendant and issue of suicide, and *Gautam* involves the lack of professional care in representing an underlying litigation. Although neither are precisely on point, together they help guide us in the direction we must take in our analysis of the present case. In order to hold an attorney legally

liable, the plaintiff will need to show that the attorney either breached his contractual duties or acted contrary to his client's professional interests; not simply that the plaintiff had a fragile mental state and could not accept the outcome of the litigation (or the vagaries of a meretricious affair).

The parties here chose to enter into a consensual extramarital affair, and it turned out badly. Such behavior may have been immoral and unethical for the defendant. But unless there is a claim that rises to the level of malpractice based on a breach of a professional or contractual duty, Frost is no more liable to Schwarz than are the many other Americans who make bad judgments in choosing a mate or engage in nefarious extra-marital coitus. To hold otherwise under the umbrella of negligent infliction of emotional distress would be to stretch the boundaries of *Sinn, Crivellaro, Armstrong,* and *Brown.*

Notwithstanding that one may empathize with the plaintiff, not every wrong constitutes a legally cognizable cause of action. *Lubowitz v. Albert Einstein Medical Center,* 424 Pa. Super. 468, 623 A.2d 3 (1993). "The law is not the guarantor of an emotionally peaceful life. Tort law cannot protect any of us from the emotional slings and arrows of daily living." *Armstrong,* 430 Pa. Super at 56, 633 A.2d at 615. Under these circumstances, such decisions are left to the parties' better judgment, and the attorney's professional responsibility and code of ethics.

Based on the foregoing, the defendant's motion for summary judgment was granted.