**D.M., Appellant**

v.

**V.B., Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 15, 2014.
Filed March 3, 2014.

Jay M. Feinschil, Philadelphia, for appellant.

V.B., appellee, pro se.

BEFORE: FORD ELLIOTT, P.J.E, OTT and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:

D.M. (Appellant) appeals from the July 19, 2013 order denying his petition to de-

* Retired Senior Judge assigned to the Superior Court.

termine paternity of three children: G.W., A.M., and D.R.M. We affirm.

The trial court summarized the history of this case as follows.

In 2000, Appellant and [V.B. (Appellee)] resided in the same household in Philadelphia, Pennsylvania with Appellee's son from another relationship when Appellant obtained custody of his [grandniece, A.M. (born in September 2000)]. By Order dated October 5, 2000, the Philadelphia Family Court granted Appellant sole physical and legal custody of [A.M.]. Appellant's nephew, [A.M.]'s biological father[,] was unable to care for [A.M.] because he was incarcerated for an assortment of criminal offenses. [A.M.]'s biological mother consented to relinquishing custody of [A.M.] to Appellant because she was physically and mentally unable to care for [A.M.]. In order to facilitate the prompt transfer of custody from [A.M.]'s biological mother, Appellant held himself out as [A.M.]'s biological father and permitted himself to be named as father in the Custody Order. The parties have been actively involved in [A.M.]'s life, raising her since Appellant obtained legal custody of [A.M.] as an infant.

On April 3, 2002, Appellant was granted sole physical and legal custody of his [granddaughter G.W. (born in April 1998)], by Order of the Philadelphia Family Court. Appellant took custody of [G.W.] when [a Nevada court] terminated the parental rights of [G.W.]'s biological father after he was convicted of murdering [G.W.]'s sister. [G.W.]'s biological mother willingly relinquished her parental rights thereafter. The parties have been in [G.W.]'s life, raising her since Appellant obtained legal custody of [G.W.] as a small child.

During the parties' live-in-together relationship, they had one child [D.R.M. (born in December 2003)]. After the birth of [D.R.M.], the parties married.... Appellant believed that [D.R.M.] was his biological daughter and held the child out as his own. In 2006, the parties moved to Norristown, Pennsylvania and continued to raise the children together. On April 15, 2011, the parties separated when Appellee, on behalf of [G.W., D.R.M.,] and herself, filed a temporary Protection from Abuse ("PFA") Order against Appellant, evicting Appellant from the parties' marital residence. On April 21, 2011, the Honorable Rhonda Lee Daniele granted a final PFA Order on behalf of [G.W. and D.R.M.] only.

On April 26, 2011, Appellee filed a Complaint for Support with the Office of Domestic Relations ("DRO"), which was amended to include all three children on June 2, 2011. On June 2, 2011, Appellant, who was represented by counsel, signed an Acknowledgement of Paternity ... acknowledging that he is the father of [A.M.] and [D.R.M.]. On June 30, 2011, the parties appeared at a Support Master's hearing before Master, Mindy A. Harris, Esquire ("Master Harris"). Master Harris recommended Appellant pay $532.20 per month for [D.R.M.] plus $883.00 per month for [G.W.] and [A.M.] for a total child support amount of $1,418.20 per month for all three children. On July 25, 2011, [Appellant] filed Exception[s] in Support to the Master's recommendation. On October 7, 2011, the Honorable Gary S. Silow modified the Support Order by agreement of the parties. Appellant agreed to pay $1,018.20 per month for all three children. No appeal was taken from the October 7, 2011 Agreed Support Order. On June 4, 2012, Appellant filed a Petition to Modify Support, claiming he is not the biological father of the children and no longer their current custodian

with DRO. On September 27, 2012, the parties, with their respective counsel, appeared before Master Harris. Master Harris dismissed Appellant's Petition to Modify Support because there had been no change in circumstance. Appellant did not file Exceptions to the Master's recommendation. To date, Appellant continues to pay $1,018.20 per month for all three children.

[Meanwhile, o]n May 27, 2011, Appellee filed separate Emergency Complaints for Physical and Legal Custody, seeking custody of [G.W. and A.M.]. On June 27, 2011, the parties filed a Temporary Agreed Custody Order, providing Appellee with physical custody of [G.W. and A.M.], the parties with shared legal custody[,] and Appellant with unsupervised visitation of all three children. On February 8, 2012, the parties appeared with counsel for a final hearing on Appellee's above Emergency Complaints for Physical and Legal Custody. On the same day, the parties entered into a final Agreed Order, providing the parties with joint legal custody, [and] Appellee with physical custody of the children until the conclusion of the 2011–2012 school year when Appellant would resume physical custody until Appellee found suitable living arrangements. Thereafter, the parties would share 50/50 physical custody of the three children.

On March 14, 2012, Appellee, on behalf of [A.M.], filed another PFA Order against Appellant. On March 24, 2012, Appellee also filed separate Emergency Petitions to Modify Custody. The parties appeared with counsel before [the trial court] for a hearing on Appellee's PFA Petition and Emergency Petitions to Modify Custody. At the hearing, the children testified that they no longer desired further contact with Appellant. At the conclusion of the hearing, the [trial court] granted Appellee's final PFA order on behalf of [A.M.]. In addition, the [trial court] issued a subsequent Custody Order by agreement of the parties, awarding Appellee sole physical and legal custody of all three children.

On January 4, 201[3], Appellant filed a Petition to Determine Paternity, seeking a paternity test for all three children. Appellant claimed that [ ] Appellee fraudulently deceived him into believing that [D.R.M.] was his biological issue. Appellant claimed that he had no duty to support children who are not his biological issue and with whom he has no custodial obligations. On February 19, 2013, Appellee filed an Answer with New Matter, claiming that Appellant is barred and estopped from denying paternity. On July 16, 2013, the parties appeared with their respective counsel before [the trial court] for a hearing on Appellant's Petition to Determine Paternity, In July 19, 2013, [the trial court] issued an Order, denying Appellant's Petition to Determine Paternity, thereby estopping Appellant from disestablishing paternity with respect to the children.

On August 16, 2013, [Appellant] filed a timely Notice of Appeal to the Pennsylvania Superior Court from [the trial court]'s order dated July 19, 2013.

Trial Court Opinion, 9/17/2013, at 1–5 (footnotes omitted).

Appellant did not file a statement of errors complained of on appeal simultaneous with his notice of appeal as required by Pa.R.A.P. 905(a)(2) and 1925(a)(2)(i), rendering the notice of appeal defective, but not divesting this Court of jurisdiction. *In re K.T.E.L.*, 983 A.2d 745, 747 (Pa.Super.2009). As Appellant has since rectified the error, we see no prejudice to any party resulting from Appellant's failure to ad-

here to the procedural rules in this instance, and we shall proceed to review the merits of the appeal.

Appellant raises the following questions on appeal.

1. Whether the [t]rial [c]ourt erred as a matter of law by ruling that the [d]octrine of [p]aternity by [e]stoppel barred Appellant from getting the [d]etermination of [p]aternity he petitioned for with respect to three children who had been in his custody and care ... ?

2. Whether the [t]rial [c]ourt [c]omitted an error of law by ruling that the [d]octrine of [c]ollateral [e]stoppel barred Appellant from getting the [d]etermination of [p]aternity he petitioned for with respect to three children who had been in his custody and care ... ?

Appellant's Brief at 4 (trial court answers and suggested answers omitted).

■ Our standard of review of paternity determinations is that of an abuse of discretion. *T.E.B. v. C.A.B.*, 74 A.3d 170, 173 n. 1 (Pa.Super.2013) (citing *Vargo v. Schwartz*, 940 A.2d 459, 462 (Pa.Super.2007)).

■ The trial court opined that Appellant is precluded from challenging his paternity of the three children by both collateral estoppel and paternity by estoppel. "[W]here estoppel is applied, blood tests may be irrelevant, for the law will not permit a person in estoppel situations to challenge the status which he or she has previously accepted. Only when estoppel does not apply will blood tests be ordered." *Freedman v. McCandless*, 539 Pa. 584, 654 A.2d 529, 532 (1995).

■ We first consider Appellant's challenge to the trial court's determination on the issue of collateral estoppel.

When a support order is entered in a case and the obligor fails to file a timely appeal, he is subsequently estopped from denying paternity. The entry of a support order necessarily determines the issue of paternity. Paternity is necessarily adjudicated in entering the initial support order. The putative father is precluded from challenging paternity even if subsequently performed blood tests exclude him as the child's biological father. If no timely direct appeal is taken from the support order, the paternity determination cannot be challenged later because it has been established as a matter of law.

*McConnell v. Berkheimer*, 781 A.2d 206, 211–212 (Pa.Super.2001) (citations omitted). However, exceptions to the conclusiveness of a support order on this issue of paternity exists "where fraud or mutual mistake induces a party to enter into such an order." *Schultz v. Connelly*, 378 Pa.Super. 98, 548 A.2d 294, 297 (1988).

In the instant case, Appellee filed a complaint for support on April 26, 2011, and amended it to include all three children on June 2, 2011. Also on June 2, 2011, Appellant signed an Acknowledgment of Paternity form as to A.M. and D.R.M., expressly stating that he had been advised of, but chose to waive, the rights to "(1) genetic tests on the issue of paternity, (2) a trial on the issue of paternity and (3) an attorney to represent [him] on the issue of paternity." Acknowledgement of Paternity, 7/11/2011. The record contains no indication that such a form was executed as to G.W.

Following a hearing on June 30, 2011, the support conference officer provided a suggested order of support, which was approved and entered by the trial court on July 8, 2011. That order provides, in relevant part, as follows.

[Appellee] filed a Complaint for Support for 3 children. She is the biological mother of 1 of the children[, D.R.M.].

[Appellant] is the biological **father** of [D.R.M. and A.M.]. The parental rights of [A.M.]'s mother have been terminated.

[Appellant] is the biological **grandfather** of [G.W.]. The parental rights of both of her parents have been terminated.

Order, 7/8/2011 (emphasis added).

Appellant filed exceptions to the initial support order, which resulted in the October 7, 2011 agreed order. That order altered the initial order only in that Appellant's total monthly support was reduced by $400.00. Appellant did not appeal from the October 7, 2011 order.

The trial court determined that Appellant's failure to appeal from the entry of the October 7, 2011 agreed support order precludes him from now relitigating the issue of the paternity of the children he agreed to support. Trial Court Opinion, 9/12/2013, at 12. We agree as to A.M. and D.R.M., but disagree as to G.W.

■ Comparing this record to the above-cited legal principles, the trial court's determination that Appellant is precluded from relitigating the paternity of A.M. and D.R.M. was not erroneous. Appellant confirmed that he understood his right to challenge and litigate the issue of paternity of A.M. and D.R.M., but instead acknowledged that he is the biological father of both. The support order entered after a hearing expressly provides that Appellant is the biological father of A.M. and D.R.M. Appellant did not take exception to that portion of the initial support order, nor file an appeal from the subsequent agreed order. Accordingly, Appellant's paternity of A.M. and D.R.M. has been conclusively established as a matter of law, and he may not relitigate the issue absent a showing that fraud or mutual mistake induced him to enter into the agreed support order.

Appellant makes no claim that fraud or mistake induced him to acknowledge paternity of A.M. Indeed, the only fraud raised in the petition is the fraud Appellant himself committed to obtain custody of A.M.:

a) [A.M.]'s mother ... relinquished custody of her child to [Appellant] because she was physically and mentally unable to give the child proper care. The child's biological father, [Appellant]'s nephew, was then in jail for a variety of offenses and was also unable to care for his child.

b) In order to facilitate the prompt transfer of custody of the child from [A.M.'s mother] to [Appellant], [Appellant] held himself out as the father of the child and permitted himself to be named the father in the Court Order [which granted custody to Appellant].

Petition to Determine Paternity, 1/14/2013, at ¶ 2. In his brief, Appellant offers further explanation for his reasons by citing, and apparently adopting as his own, the following testimony of Appellee.

[Appellee]: He placed himself on her birth certificate at the time of her birth.... When [A.M.'s mother] gave birth to [A.M.], there was no father involved, no involvement. She wanted to leave the baby with us and instead of adopting the baby, he put himself on [A.M.]'s birth certificate and placed himself as her father; went down to the courthouse and took full custody, took custody from the mother and took full custody of [A.M.].

\*    \*    \*

[Appellant's counsel]: He's not [A.M.]'s father and has no custody over her?

[Appellee]: He's not [A.M.]'s—no. Her mother came to Philly, gave birth to

her. He put his name on the birth certificate to not pay adoption fees.

Appellant's Brief at 22 (citations to the record omitted).

If Appellant had adopted A.M., rather than lied to avoid paying the fees, there would be no question of paternity or Appellant's support obligations. Absent allegations of mistake or fraud perpetrated upon Appellant, he is collaterally estopped to deny paternity of A.M.

■ As to D.R.M., Appellant states that at a PFA hearing on May 29, 2012, Appellee "indicated, under oath, that [Appellant] may not, after all, have been the biological father of" D.R.M. *Id.* at ¶ 3(a). The testimony in question is as follows.

Q. And [D.R.M.] is?

A. Our daughter.

Q. Your daughter, right, but not [Appellant's] biological child, correct?

A. Well, he signed her paternity papers, so he is.

*Id.* at Exhibit I. The trial court was unconvinced that Appellant had pled with particularity, or proved by clear and convincing evidence, that Appellant was induced by fraud to acknowledge paternity of D.R.M. Trial Court Opinion, 9/12/2012, at 10. Appellant produced no evidence that Appellee was sexually involved with another man at the time D.R.M. was conceived; and "Appellee never testified that there was a possibility that [D.R.M.] was not the Appellant's child." *Id.* We agree that Appellee's single, cheeky response to the question above is woefully insufficient to except Appellant from collateral estoppel as to D.R.M.'s parentage.

■ However, the record does not support the trial court's determination that the support order determined Appellant's paternity of G.W. As noted above, the record does not contain an acknowledgment of paternity and waiver of trial form as to G.W. The initial support order that was entered upon litigation of support specified that Appellant is G.W.'s grandfather, not her father. The record simply contains no evidence that Appellant ever acknowledged, asserted, or claimed to be G.W.'s father, or that any order indicating that Appellant is G.W.'s father was ever entered. Accordingly, Appellant's paternity of G.W. was never litigated or decided in the support action, and collateral estoppel does not preclude him from disclaiming paternity now.

■ We next consider whether the trial court's determination that paternity by estoppel precludes him from challenging his support obligation as to G.W.

Paternity by estoppel is merely the legal determination that because of a person's conduct (*e.g.,* holding the child out as his own or supporting the child), that person, regardless of his true biological status, will not be permitted to deny parentage.... [T]he law will not permit a person in these situations to challenge the status that he or she has previously accepted. The doctrine of paternity by estoppel seeks to protect the interests of the child.

Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father [s]he had known all [her] life is not in fact [her] father.

[O]ur Supreme Court recently considered the continuing applicability of the doctrine and held that it is the interests of the child that are paramount: "paternity by estoppel continues to pertain in Pennsylvania, but it will apply only

where it can be shown, on a developed record, that it is in the best interests of the involved child." *K.E.M. v. P.C.S.*, 614 Pa. 508, 38 A.3d 798, 810 (2012). *T.E.B.*, 74 A.3d at 173–174 (some quotation marks and citations omitted).

 Paternity by estoppel clearly has no applicability to Appellant's relationship with G.W., as Appellant never held himself out as her father. Everyone involved, including G.W., knows that Appellant is G.W.'s grandfather, not her father. *See, e.g.,* N.T. (PFA Hearing), 4/21/2011, at 29 (wherein G.W. acknowledges that Appellant is her grandfather). Accordingly, the policy behind the doctrine (allowing children to be secure in knowing who their parents are, and to protect them from the trauma of learning that father is not really father) is in no way furthered by forcing Appellant to maintain parental responsibilities for G.W. Furthermore, neither Appellee nor the trial court cites any case in which the doctrine of paternity by estoppel has been applied to a grandparent or other relative who assumed custody and support of a child. Therefore, paternity by estoppel does not prevent Appellant from denying paternity of G.W.

 Nonetheless, we affirm the order denying Appellant's petition for paternity testing as to G.W.[1] The record evidence is clear and undisputed: Appellant is the grandfather, not the father, of G.W. Ordering genetic testing is unwarranted where there is no dispute of fact on the issue: everyone involved agrees that Appellant is **not** G.W.'s biological father. No DNA test is necessary to confirm that fact. Therefore, there was no error in denying a petition for a pointless test.

The only order at issue in this appeal is the order denying Appellant's petition for paternity testing to establish the parentage of G.W., A.M., and D.R.M. By collateral estoppel, Appellant is precluded from denying that he is the father of A.M. or D.R.M. Based upon the undisputed evidence of record, Appellant is **not** the father of G.W.[2] Accordingly, paternity testing is not warranted.

Order affirmed.

---

1. "[W]e may affirm a trial court's ruling on any basis supported by the record on appeal." *Lynn v. Nationwide Ins. Co.,* 70 A.3d 814, 823 (Pa.Super.2013).

2. The impact this determination has upon Appellant's support obligations toward G.W. is not before this Court in this appeal.