J-S26034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| W.T.O., IV | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.N.B | : | |
| | : | |
| Appellant | : | No. 518 MDA 2021 |

Appeal from the Order Entered April 7, 2021
In the Court of Common Pleas of Berks County Civil Division at No(s):
2020-18674

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED: OCTOBER 15, 2021**

J.N.B. ("Mother") appeals from the Order granting the request filed by W.T.O., IV ("Plaintiff"), seeking genetic testing of a minor child, K.R.B. ("Child") (a female born in June 2016).[1]  We affirm.

Plaintiff filed a Complaint to Establish Paternity and For Genetic Testing in December 2020, in the Berks County Court of Common Pleas.[2]  In  the

---

[1] We have redacted the parties' names in the caption and have redacted the participants' names in the remainder of this Memorandum, so that Child may not be identified, pursuant to our Internal Operating Procedure Rule § 65.44 (effective January 2021).

[2] Plaintiff also filed a Complaint related to custody of the Child.  For an unknown reason, the Berks County Prothonotary's Office did not file the two Complaints under the same docket.  As such, the Custody Complaint is docketed at No. 2020-18574, while the Paternity Complaint is docketed at No. 2020-18674.  The instant appeal is taken from docket No. 2020-18674, regarding the Paternity Complaint.

Paternity Complaint, Plaintiff asserted his belief that he is Child's father and

sought genetic testing to establish paternity of Child pursuant to 23 Pa.C.S.A.

§ 4343.[3]  Mother served Plaintiff with her Answer and New Matter, raising the

---

[3] Section 4343 states, in relevant part, as follows:

> **(a) Determination.--** Where the paternity of a child born out of wedlock is disputed, the determination of paternity shall be made by the court in a civil action without a jury. A putative father may not be prohibited from initiating a civil action to establish paternity.  The burden of proof shall be by a preponderance of the evidence.  Bills for pregnancy, childbirth, postnatal care related to the pregnancy and genetic testing are admissible as evidence without requiring third-party foundation testimony and shall constitute prima facie evidence of amounts incurred for such services or for testing on behalf of the child.  If there is clear and convincing evidence of paternity on the basis of genetic tests or other evidence, the court shall upon motion of a party issue a temporary order of support pending the judicial resolution of a dispute regarding paternity.  The Supreme Court shall provide by general rule for entry of a default order establishing paternity upon a showing of service of process on the defendant and a subsequent failure to appear for scheduled genetic testing.

> * * *

> **(c) Genetic tests.--**

> (1) Upon the request of any party to an action to establish paternity, supported by a sworn statement from the party, the court or domestic relations section shall require the child and the parties to submit to genetic tests.  The domestic relations section shall obtain an additional genetic test upon the request and advance payment by any party who contests the initial test.

23 Pa.C.S.A. § 4343.

- 2 -

doctrine of paternity by estoppel.[4]  The trial court delayed action on the Custody Complaint pending resolution of the question of Child's paternity.  As the trial court noted in its Opinion, Plaintiff will not have standing to seek custody if paternity testing reveals he is not the father.  Trial Court Opinion, 5/24/21, at 1.

On March 15, 2021, the trial court held an evidentiary hearing on Plaintiff's request for genetic testing.  Plaintiff and Mother were present with their respective counsel.  They each testified on their own behalf.  Plaintiff also presented the testimony of his sister ("J.O."), and had several photographs admitted into evidence as exhibits.  Mother had the Child's birth certificate, an Acknowledgment of Paternity form signed by Mother's husband ("A.S."), and a message from Plaintiff admitted into evidence as exhibits.

In its Opinion, the trial court summarized the testimony provided by Plaintiff, J.O., and Mother, and rendered credibility determinations as to each individual, which we adopt as though fully set forth herein.  *See* Trial Court Opinion, 5/24/21, at 2-6.  In particular, the trial court found Plaintiff to be

---

[4] Mother captioned her New Matter and Answer at docket No. 2020-18674, the docket related to the Paternity Complaint and the docket from which Plaintiff took his appeal.  However, her Answer and New Matter was filed at docket No. 2020-17854, the docket related to the Custody Complaint.  Thus, Mother's Answer and New Matter is not part of the certified record in the instant case.  We have confirmed, however, that Mother's Answer and New Matter was filed and docketed at No. 2020-17854 and Plaintiff responded to the same.  It is unclear why her Answer and New Matter was filed at the incorrect docket, and our review has not been hampered by the error.

attentive and thoughtful throughout the proceedings and found his testimony to be "largely credible." *Id.* at 2. Similarly, the trial court found J.O. to be "both thoughtful in responding to questions and candid." *Id.* at 3. However, the trial court found Mother's testimony "generally not credible—especially in regard to questions concerning her past statements about the Child's parentage." *Id.* at 4.

Following the hearing, the trial court entered an Order captioned, Temporary Custody Order granting Plaintiff's request for genetic testing regarding paternity of Child. On April 7, 2021, Mother filed a Notice of Appeal and a Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Before we address the merits of Mother's appeal, we will address Plaintiff's argument that the Order at issue is interlocutory. Brief for Appellant at 12. It is well-settled that "[a]n appeal lies only from a final order, unless permitted by rule or statute." *Stewart v. Foxworth*, 65 A.3d 468, 471 (Pa. Super. 2013). Generally, a final order is one that disposes of all claims and all parties. *See* Pa.R.A.P. 341(b).

Our Supreme Court has held that an order directing or denying blood tests in a paternity action, though interlocutory, is immediately appealable. *Jones v. Trojak*, 634 A.2d 201, 204 (Pa. 1993); *id.* (citing the Court's concern for the best interests of the child). *See also Freedman v. McCandless*, 654 A.2d 529, 533-35 (Pa. 1995) (reaffirming the principle that

an appeal from an order directing blood tests is appealable, even in a situation where the mother and the alleged presumptive father were never married). Accordingly, Mother's appeal is properly before this Court. **Jones**, **supra**; **Freedman**, **supra**.

In her appellate brief, Mother raises one issue: "Did the [t]rial [c]ourt commit an error of law in refusing to apply the doctrine of estoppel and granting [Plaintiff's] request that the [c]ourt order [Mother] to submit to genetic testing to determine paternity of [Child]?" Brief for Appellant at 4.

In its Opinion, the trial court suggests that we should find that Mother's Concise Statement is too vague to allow for meaningful appellate review, and lacks specificity concerning her issue.[5] Trial Court Opinion, 3/24/21, at 7. Our review of the hearing transcript reveals that Mother primarily argued that Plaintiff was estopped from seeking genetic testing by the doctrine of paternity estoppel. N.T., 3/15/21, at 5 (wherein counsel for Mother stated she raised the issue of paternity by estoppel in Mother's New Matter); **Id.** at 9 (wherein counsel for Mother stated that she was arguing estoppel at the hearing). Moreover, the trial court set forth findings relevant to the issue of paternity

_____

[5] In her Concise Statement Mother framed her issue as follows: "Did the [t]rial [c]ourt err when it granted Plaintiff's Complaint to Establish Paternity and for Genetic Testing in light of the testimony and evidence presented at the Hearing on March 15, 2021?" Concise Statement of Errors Complained of on Appeal, 4/7/21.

by estoppel in its Opinion, thus adequately facilitating our review. Accordingly, we decline to find Mother's claim waived.

In her brief, Mother argues that the trial court improperly granted Plaintiff's request for genetic testing, because it should have been denied pursuant to the doctrine of estoppel. Brief for Appellant at 8. Mother argues that the trial court committed an error of law in refusing to apply the doctrine of estoppel to the present case because Father waited for four-and-a-half years before he filed his Complaint for genetic testing, and she did not create obstacles to his doing so previously. *Id.* at 22. Mother relies heavily upon two cases, *C.T.D. v. N.E.E.*, 653 A.2d 28 (Pa. Super. 1995), and *Buccieri v. Campagna*, 889 A.2d 1220 (Pa. Super. 2005). Brief for Appellant at 8, 10.

We review an order in an appeal from a paternity determination for an abuse of discretion. *D.M. v. V.B.*, 87 A.3d 323, 327 (Pa. Super. 2014) (citing *T.E.B. v. C.A.B.*, 74 A.3d 170, 173 n.1 (Pa. Super. 2013)); *Vargo v. Schwartz*, 940 A.2d 459, 462 (Pa. Super. 2007)).

> An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not enough [for reversal] that we, if sitting as a trial court, may have made a different finding.
>
> [*Doran v. Doran*, 820 A.2d 1279, 1282 (Pa. Super. 2003)] (citations omitted).
>
> "The finder of fact is entitled to weigh the evidence presented and assess its credibility." *Smith v. Smith*, [] 904 A.2d 15, 20 (Pa.

Super. 2006). In so doing, the finder of fact "is free to believe all, part, or none of the evidence and [we as an appellate court] will not disturb the credibility determinations of the court below." *Id.* (citation omitted).

*Vargo*, 940 A.2d at 462.

Traditionally, in paternity cases, the court first considers the presumption of paternity, which only applies when a child is born into an intact marriage. *Id.* at 463. Where, as here, the parties were unmarried at the time of the child's birth, the court addresses the applicability of the doctrine of paternity by estoppel. *Id.* at 464. Estoppel is a paternity determination that is based upon the conduct of the mother and the father, which bars a party from disputing paternity. *Id.* Our Supreme Court has held that, "paternity by estoppel continues to pertain in Pennsylvania, but it will apply only where it can be shown, on a developed record, that it is in the best interest of the involved child." *K.E.M. v. P.C.S.*, 38 A.3d 798, 810 (Pa. 2012).

Paternity by estoppel

> is merely the legal determination that because of a person's conduct (*e.g.,* holding the child out as his own or supporting the child), that person, regardless of his true biological status, will not be permitted to deny parentage. … [T]he law will not permit a person in these situations to challenge the status that he or she has previously accepted. The doctrine of paternity by estoppel seeks to protect the interests of the child.
>
> Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being

- 7 -

told that the father [s]he had known all [her] life is not in fact [her] father.

[O]ur Supreme Court recently considered the continuing applicability of the doctrine and held that it is the interests of the child that are paramount: "paternity by estoppel continues to pertain in Pennsylvania, but it will apply only where it can be shown, on a developed record, that it is in the best interests of the involved child." *K.E.M. v. P.C.S.*, [], 38 A.3d 798, 810 (Pa. 2012).

*T.E.B.*, 74 A.3d at 173-74 (some quotation marks and citations omitted).

*D.M.* 87 A.3d at 329-30. "Where [paternity by] estoppel is applied, blood tests may be irrelevant, for the law will not permit a person in estoppel situations to challenge the status which he or she has previously accepted. Only when estoppel does not apply will blood tests be ordered." *Id.* at 327 (citing *Freedman*, 654 A.2d at 532).

In her brief, Mother relies upon *C.T.D.* In *C.T.D.*, this Court addressed whether a putative father had the right to request court-ordered blood tests to determine paternity. *C.T.D.*, 653 A.2d at 29. When the child was conceived, the mother was engaged in sexual relationships with three men: M.C.E, C.T.D., and S.M. *Id.* The mother's contact with C.T.D. lessened during her pregnancy. *Id.* The child was born in June 1991. *Id.* Two days after the birth of child, the mother told C.T.D. that the baby was a male, and that she was now with M.C.E. *Id.* At that point, communication between C.T.D. and the mother had ceased. *Id.* On December 31, 1991, M.C.E. and

the mother were married, and a new birth certificate was issued for the child naming M.C.E. as the father. *Id.*

When the child was almost two years old, C.T.D filed a complaint in custody and a petition for blood tests. *Id.* The mother refused to submit to the testing. *Id.* After an evidentiary hearing, the trial court ordered the tests. *Id.* On appeal, the mother claimed that C.T.D. was estopped from requesting the tests, because his petition was not filed until the child was almost two years old and after the mother and M.C.E. had established a family unit. *Id.* at 60-61.

On appeal, this Court concluded that the presumption of paternity does not apply because the mother and M.C.E. were not married when the child was born. *Id.* at 30-31. This Court reversed the Order granting the putative father's petition for testing, and remanded for a determination of whether C.T.D.'s actions constituted an abandonment of the child, and whether he should be estopped from raising his claim of paternity. *Id.* We instructed that "*[p]art of that determination should examine whether [the mother] and M.C.E. by their actions frustrated C.T.D.'s ability to seek custody or visitation*." *Id.* (emphasis added). Thus, *C.T.D.* offers Mother no basis for relief.

Mother similarly relies on *Buccieri*. In that case, the child's mother appealed from an order granting the putative father's petition for paternity testing. *Buccieri*, 889 A.2d at 1221. The child was born in November 1996. *Id.* The putative father waited until March 2004 to file his complaint for partial

custody and his petition for paternity testing.  *Id.*  The panel in ***Buccieri*** stated as follows:

> [The putative father] has been absent from [the child's] life over the course of her twelve years.  [The child's m]other and [her h]usband have taken the entire responsibility for [the child].  [The putative father] is equitably estopped from undoing the situation that he created, by his words and by his failure to act.

*Id.* at 1226-27 (some citations omitted).  The Court found that even if it accepted putative father's assertion that he did not know about the child's birth until four years after she was born, he took no action to assert his parental rights until another four years had passed:

> [The putative father's] own delay and inactivity for eight years now bars him from confirming or asserting his paternity **through genetic tests**.  When balanced against societal concerns for constancy in the child's life, we see no reason to allow [the putative father] to march into [the child's] life at this late date.  As a practical matter, [the child's] health and social history can still be completed.  The record raises no genuine question as to whether [the putative father] is [the child's] biological father.  Under the circumstances of this case, [the putative father] is estopped by his own past conduct from obtaining genetic tests to establish his paternity and/or assert his paternal rights.

***Buccieri***, 889 A.2d at 1228 (emphasis in original, citation omitted).  Here, unlike in ***Buccieri***, Father was not voluntarily absent from Child's life.

In the instant case, the trial court explained its bases for ordering genetic testing as follows:

> As previously mentioned, the [t]rial [c]ourt found Plaintiff to be generally credible in testifying – most specifically that he was engaged in a sexual relationship with Mother at or around the time the Child was conceived.  Plaintiff was also credible when he testified that Mother told him he was the father of the Child.  [J.O.]

was found to be credible in her testimony as well, most especially that Mother told her Plaintiff was the father and that [J.O.] was the Child's aunt.

In stark contrast, Mother's testimony was largely unbelievable. Mother tried to explain that her statement about Plaintiff not being the "father she needs him to be" was general and not specific to the Child. Mother also tried to explain that calling [J.O.] the Child's "aunt" was something she generally does with friends and not specific to a familial relationship with the Child. Mother tried to explain that, although the Child was born within nine months of Mother and Plaintiff being in a sexual relationship, the Child could not be Plaintiff's [child] because she was born four weeks early. Mother tried to explain that the reason [A.S.] signed an Acknowledgment of Paternity in May 2018 [was] because she wanted the Child to be eligible for [A.S.'s] benefits. It was not, she suggests, in response to Plaintiff's message to [A.S.] two days earlier asking to see the Child. Frankly, the [t]rial [c]ourt does not believe Mother when she says any of these things.

Having found Plaintiff met his burden by a preponderance of the evidence, the [t]rial [c]ourt granted the request for genetic testing. The results of testing will either show Plaintiff is the father by clear and convincing evidence or reveal he is not the father. Should the latter be shown, the [t]rial [c]ourt will resolve the pending Custody Complaint through dismissal due to lack of standing. If Mother is certain the Child is not Plaintiff's [child], then it would seem logical for her to assume genetic testing would confirm her assertion and welcome the validation it would provide. [This is especially true,] considering Mother put forth no suggestion – either through argument or testimony – that a buccal swab of the Child's mouth would present any sort of danger, harm, or distress to the Child. Instead, it would seem Mother believes the same thing the [t]rial [c]ourt has found to be established by a preponderance of the evidence – Plaintiff's claim of paternity is valid.

Trial Court Opinion, 5/24/21, at 8-10 (emphasis in original) (footnotes omitted).

Given the facts of the instant case and the trial court's findings and determinations, both **C.T.D.** and **Buccieri** are distinguishable from the instant matter. Herein, the trial court found credible Plaintiff's testimony that he has made attempts to have a relationship with Child, and that Plaintiff sent Child birthday cards and has sent Mother's Day cards, but received no reply. **See** Trial Court Opinion, 5/24/21, at 3. The trial court additionally credited Plaintiff's testimony that Mother had created obstacles to his seeking genetic testing any sooner. **Id.** Indeed, Plaintiff testified that Mother had threatened to have him arrested for harassment, through his probation officer, if he tried to be involved in Child's life.[6] N.T., 3/15/21, at 19. J.O. confirmed that Mother had threatened to "do everything to try to keep [Plaintiff] out [of her life]." **Id.** at 37. Moreover, the trial court repeatedly stated that it did not find Mother's testimony to be credible. Trial Court Opinion, 5/24/21, at 4 (finding that Mother's testimony was "generally not credible"); **id**. at 10 (noting that in contrast to Plaintiff's and J.O's testimony, "Mother's testimony was largely unbelievable"). We cannot overturn the trial court's findings of credibility in this regard. **See Vargo**, 940 A.2d at 462.

After careful review, we conclude that the trial court properly considered the testimony and documentary evidence in applying the doctrine of paternity

---

[6] The parties stipulated that Plaintiff was discharged from parole in October 2020. N.T., 3./15.21, at 18. Plaintiff filed both the Custody Complaint and the Paternity Complaint shortly after he was discharged from parole.

- 12 -

by estoppel. Our review of the record further confirms that there is sufficient, competent evidence in the record to support the trial court's determinations. As such, we may not disturb them. **Vargo**, **supra**. We therefore affirm the Order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2021

## IN THE SUPERIOR COURT OF PENNSYLVANIA

| | |
|---|---|
| W___ . O___ | : No. 518 MDA 2021 |
| | : |
| vs. | : Berks County Docket |
| | : No. 20-18674 |
| J___ N___ B___ | : |
| | : |

OPINION, J. Benjamin Nevius, J.                    Dated: May 24, 2021

This matter involves the appeal of J___ N___ B___ ("Mother") of the Trial Court's temporary custody order granting the request of W___ . O___ ("Plaintiff") (and together with Mother, the "Parties") for genetic testing of himself and the minor child, K.R.B. (b. 2016) (the "Child'). Plaintiff filed a Complaint to Establish Paternity and Request Genetic Testing (the "Paternity Complaint") in the Berks County Court of Common Pleas. Nearly contemporaneously, Plaintiff also filed a Complaint related to the Child (the "Custody Complaint") (together with the Paternity Complaint, the "Complaints").[1] This Opinion follows.

## I.    FACTUAL AND PROCEDURAL HISTORY

As set forth above, Plaintiff petitioned the Trial Court for custodial rights to the Child. He further asks as an initial matter that the Trial Court order genetic testing to verify paternity of the Child. The Trial Court has delayed action on Plaintiff's Custody Complaint pending resolution of the paternity question. Quite simply, Plaintiff will not have standing to seek custody if testing reveals he is not the father.

### A.    The Hearing

On March 15, 2021, the Trial Court conducted an evidentiary hearing on Plaintiff's request for genetic testing (the "Hearing") at which Plaintiff and Mother testified, as well as

---

[1] For some reason, the Berks County Prothonotary's Office did not file the Complaints under the same docket. As such, the Custody Complaint is docketed at No. 20-18574, while the Paternity Complaint is docketed at 20-18674. This appeal is taken from the Paternity Complaint.

1

Received County of Berks Prothonotary's Office on 05/24/2021 3:30 PM Docket No. 20-18674

J___ O___ ("Ms. O___"). In addition to testimonial evidence, Plaintiff submitted several photographs into evidence. Mother submitted the Child's birth certificate (the "Birth Certificate"), an Acknowledgment of Paternity form (the "Acknowledgment"), and a message from Plaintiff as exhibits. Below is a brief summary of the relevant testimony offered by the Parties at the Hearing.

### 1.    Plaintiff

Plaintiff appeared for the Hearing. He was attentive throughout the proceedings and thoughtful in responses during testimony. Plaintiff's testimony was largely credible.

Plaintiff testified that he and Mother had been in a relationship from the end of 2013 until shortly after the birth of the Child. Plaintiff lived with Mother until he was incarcerated[2] in Montgomery County, beginning in October 2015. Mother wrote to him regularly and visited him twice weekly during his incarceration, at least initially. Plaintiff said Mother's visits became less frequent closer to the Child's birth. Plaintiff testified that, during one of Mother's visits in November 2015, she told Plaintiff she was pregnant with Plaintiff's child. Plaintiff testified he and Mother were intimate up until his incarceration – some eight to nine months prior to the Child's birth (June 2016).

During Father's incarceration, Mother sent Father numerous pictures of the Child from the hospital at birth. Mother wrote to him about how she and the Child were doing; Plaintiff said Mother told him the Child "looked just like [Plaintiff]." While he was in state prison, Plaintiff sent a request for a visitation form so that Mother could bring the Child to see him. In response, Mother sent him a letter explaining she was "moving on with her life and if [Plaintiff] tried to be

---

[2] Plaintiff was being held awaiting disposition of drug charges. In June 2016, he pleaded guilty to several counts of possession with intent to deliver and received a sentence of two to five years' incarceration. He was subsequently transferred to SCI Graterford and later SCI Huntington. Mother pleaded guilty to conspiracy charges related to Plaintiff's conviction and received five years' probation.

2

Received County of Berks Prothonotary's Office on 05/24/2021 3:30 PM Docket No. 20-18674

involved in [the Child's] life at any point, she would try to have [Father] arrested..." Plaintiff nevertheless continues to send birthday cards for the Child, and Mother's Day cards for Mother, but he did not receive any replies.

Plaintiff testified he was released from state prison in 2017 and placed on parole for a period of three years. Plaintiff attempted to contact Mother within the first week of being released, but she did not respond. Plaintiff made numerous other attempts to contact Mother via phone and various social media platforms, but he was "blocked" by Mother. Plaintiff testified he was concerned Mother would try to have his parole violated for harassment, so he did not want to be too persistent in his attempts to reach Mother. Plaintiff testified that he did send clothes for the Child to Mother's parent's home, but the packages were denied and returned. On and off, Plaintiff would try sending messages through services like Facebook Messenger, but Mother blocked or ignored each communication.

Father said he promptly petitioned the Trial Court for custody in 2020 when he was off parole and no longer feared Mother's threat to have him arrested.

### 2. Ms. O_____

Ms. O·_____ is Plaintiff's sister and a former friend of Plaintiff's. She appeared with proper decorum and was both thoughtful in responding to questions and candid.

Ms. O_____ testified that she remained in contact with Mother after Plaintiff's incarceration. Mother told her Plaintiff was the Child's father. Ms. O._____ testified that Mother brought the Child to her house four days after she was born. She took pictures that day (which were introduced into evidence). Ms. O·_____ also presented screenshots of a conversation between her and Mother on Instagram, in which Mother stated:

> *"I have had to think hard and rearrange my life for the better for myself and the kids. Sought a lot of counseling the last few months*

Received County of Berks Prothonotary's Office on 05/24/2021 3:30 PM Docket No. 20-18674

*and had to really figure out what is best for me. It kills me Jess but I had to move on. My life will never be good with [Plaintiff] in it. He will never change and be the person, man or father that I need him to be. We all know that he's selfish in his own ways, and he's going to come home and do whatever he wants again, and I can't risk that. If I ever get in trouble again, my life is over and I go to jail. I can never risk that.*

*He hasn't assured me once time over the past year that he's willing to put forth effort into becoming a better person. I hope you understand. And I don't want this to affect our relationship as [Child's] aunt because I want you guys to know her.*

*I can't hold myself back from being happy and living my life. I met someone . . . an AMAZING man and I can't give him up."*

Additionally, Ms. O.         said that, during a phone conversation, Mother told her that if Plaintiff tried to become involved in the Child's life, she would do everything to try to keep him out. Ms. O.         testified that she relayed that threat to Father. Later in 2016, Mother blocked Ms. O         from contacting her through social media.

### 3. Mother

Mother appeared at the Hearing and was attentive throughout. She testified on her own behalf and was generally not credible – especially in regard to questions concerning her past statements regarding the Child's parentage.

Mother denied visiting Plaintiff during his incarceration beyond his first month there (October-November 2015). She also denied having any correspondence with him or ever sending pictures of the Child to him. Mother admitted to having been in a relationship with Plaintiff, but she disagreed as to the length of time they were together and for how long they lived together. Mother chiefly contends that Plaintiff cannot be the father of the Child because he was incarcerated at the time she believes she became pregnant. Mother said she learned of the pregnancy in November 2015 and she believes the Child was born at least a month early.

4

Received County of Berks Prothonotary's Office on 05/24/2021 3:30 PM Docket No. 20-18674

According to Mother, this eliminates Plaintiff as the possible father because, although she was engaged in a sexual relationship with Plaintiff approximately nine months prior to the birth of the Child, Mother had begun a new sexual relationship with her current husband, A    S    ("Mr. S       "), sometime in November 2015.

Mother denies having any idea that Plaintiff believes he is the father of the Child or that he wanted a relationship with the Child prior to Father sending a message to Mr. S       . via Facebook Messenger on April 29, 2018. That message clearly indicates that Plaintiff asserts parentage of the Child and that he would petition for a paternity test. Mr. S       did not respond to that communication.

Two days later, on May 1, 2018, Mr. S·       signed the Acknowledgment, which Mother filed with the Pennsylvania Department of Health to obtain a reissued birth certificate for the Child identifying Mr. S       as biological father. Mother admitted the original Birth Certificate did not have a father listed. On cross-examination, Mother testified she believed Mr. S       ı to be the father at the time of the Child's birth, she but did not have him identified because they were not married. She also said the reason Mr. S       ı signed the Acknowledgment was to ensure the Child would be eligible for his benefits — including life insurance — rather than in response to Plaintiff's Facebook message regarding the Child two days earlier.

Regarding allegations of having threatened to have Plaintiff arrested if he tried to contact her of the Child, Mother flatly denied ever saying or corresponding such statements to Plaintiff or Ms. O       When confronted with messages in which she referred to Ms. O       as the Child's "aunt," Mother said she also refers to another unrelated friend as the Child's aunt. When confronted with the message in which she said Plaintiff would never be the kind of father she

5

needed, Mother said she was talking about to her two older children[3] whom Plaintiff had already known.

## B.    Court Order and Appeal

After careful consideration, the Trial Court entered an order granting Plaintiff's request for genetic testing regarding paternity of the Child. Although the Trial Court is well aware of the significant implications this decision may have for an otherwise established family, it is clear from the outset that Plaintiff has asserted parental rights to the Child from the earliest days of this Child's life. Mother's testimony to the contrary, just like her testimony regarding many other things related to Plaintiff's parentage, is simply not credible. The controversy regarding Plaintiff's paternity is, therefore, of Mother's own making. If the test disproves Plaintiff's paternity, the matter is resolved in Mother's favor. If, on the other hand, it demonstrates his paternity, the Trial Court will conduct further proceedings to address Mother's other anticipated issues regarding standing, parental duties, and estoppel. In any event, Plaintiff deserves the opportunity to address the matter now so that he may pursue greater custodial rights, if appropriate, without further delay.

In fact, the Trial Court's order regarding paternity testing is not a final resolution of any issue in the case. Mother nevertheless wishes to address the Trial Court's order by interlocutory appeal to the Superior Court. Pursuant to Pa. R.A.P. No. 1925(a)(2), Mother filed a Concise Statement of Errors Complained of on Appeal (the "Concise Statement"), in which she raises only one issue:

> Did the Trial Court err when it granted Plaintiff's Complaint to Establish Paternity and for Genetic Testing in light of the testimony and evidence presented at the Hearing on March 15, 2021?

---

[3] Mother has two other children form a relationship predating her time with Plaintiff. Those children are not at issue in this action.

6

Received County of Berks Prothonotary's Office on 05/24/2021 3:30 PM Docket No. 20-18674

## II. DISCUSSION

### A. Waiver of Arguments

As an initial matter, it is well-established that if an issue is not included in the Concise Statement, it has been waived. *See Krebs v. United Refining Co.*, 893 A.2d 776, 797 (Pa. Super. Ct. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questioned involved portion of the brief on appeal results in a waiver of those issues). Further, when the Concise Statement does not sufficiently identify an issue on appeal, that issue is deemed to be waived. Specifically:

> When a court has to guess what issues an appellant tis appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.
>
> In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. While [*Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998)] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement... we conclude that *Lord* should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal."

*Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa. Super. Ct. 2006).

Here, in her Concise Statement, Mother simply asks the question of whether the Trial Court erred in granting Plaintiff's request for genetic testing. Mother provides no indication as to why she feels the Trial Court was in error, or does she cite any statute or common law precedent to suggest that the Trial Court erred as a matter of law. The Trial Court, therefore, is at a loss to understand if Mother is contending this was an abuse of discretion, insufficiency of the facts, a challenge to standing, an argument of estoppel, or any other of dozens of potential arguments as

7

Received County of Berks Prothonotary's Office on 05/24/2021 3:30 PM Docket No. 20-18674

to why she may feel granting Plaintiff's request was in error. Without such direction, Mother's Concise Statement should be considered too vague to permit meaningful review and all issues should be waived in this appeal.

### B.   Bases for Granting Relief

In accordance with Pa. Code Rule 1930.6, Father properly petitioned the Trial Court for genetic testing as to the paternity of the Child pursuant to 23 Pa. C.S.A. § 4343. The relevant portions of that statute are included here for ease of reference:

§ 4343. Paternity

(a) Determination. Where the paternity of a child born out of wedlock is disputed, the determination of paternity shall be made by the court in a civil action without a jury. A putative father may not be prohibited from initiating a civil action to establish paternity. The burden of proof shall be by a preponderance of the evidence. Bills for pregnancy, childbirth, postnatal care related to the pregnancy and genetic testing are admissible as evidence without requiring third-party foundation testimony and shall constitute prima facie evidence of amounts incurred for such services or for testing on behalf of the child. If there is clear and convincing evidence of paternity on the basis of genetic tests or other evidence, the court shall upon motion of a party issue a temporary order of support pending the judicial resolution of a dispute regarding paternity. The Supreme Court shall provide by general rule for entry of a default order establishing paternity upon a showing of service of process on the defendant and a subsequent failure to appear for scheduled genetic testing.

(b) Limitation of actions.

(1) An action or proceeding under this chapter to establish the paternity of a child born out of wedlock must be commenced within 18 years of the date of birth of the child.

(2) As of August 16, 1984, the requirement of paragraph (b)(1) shall also apply to any child for whom paternity has not yet been established and any child for whom a paternity action was brought but dismissed because of a prior statute of limitations of less than 18 years.

8

Received County of Berks Prothonotary's Office on 05/24/2021 3:30 PM Docket No. 20-18674

(c) Genetic tests.

> (1) Upon the request of any party to an action to establish paternity, supported by a sworn statement from the party, the court or domestic relations section shall require the child and the parties to submit to genetic tests. The domestic relations section shall obtain an additional genetic test upon the request and advance payment by any party who contests the initial test.

23 Pa. C.S.A. § 4343

Plaintiff commenced this action within 18 years of the date of the Child's birth, and the Child was born out of wedlock. The paternity of the Child is disputed – Plaintiff contends he is the father, while Mother contends his is not. In accordance with statute, it falls to the Trial Court to determine paternity without a jury. Plaintiff requested genetic testing; and, following the Hearing, the Trial Court ordered said testing.[4] The Trial Court determined Plaintiff met his burden, in that he established paternity by a preponderance of the evidence.[5]

As previously mentioned, the Trial Court found Plaintiff to be generally credible in testifying – most specifically that he was engaged in a sexual relationship with Mother at or around the time the Child was conceived. Plaintiff was also credible when he testified that Mother told him he was the father of the Child. Ms. O        was found to be credible in her testimony as well, most especially that Mother told her Plaintiff was the father and that she (Ms. O        ) was the Child's aunt.

---

[4] The genetic testing ordered by the Trial Court was through the same service used by the Berks County Domestic Relations Office. Rather than a blood test, which is the type of testing specifically referenced in statute and in much case law, this testing is a buccal swab. Buccal swab method of obtaining tissue to conduct deoxyribonucleic acid (DNA) testing falls within statutory definition of "genetic tests" that may be pursued in action to establish paternity. *Cable v. Anthou*, 699 A.2d 722, (Pa. Super. Ct. 1997).

[5] Petitioner must establish paternity by a preponderance of the evidence, and normally this is done by a sworn petition supported by testimony under oath at trial that there was access at the time of conception followed by the birth of the child; defendant may rebut this evidence by showing non-access and/or sterility, and if either non-access or sterility is not established, court is hard put to find the test of preponderance of evidence has not been met. *Spaw v. Springer*, 715 A.2d 1188 (Pa. Super. Ct. 1998).

9

Received County of Berks Prothonotary's Office on 05/24/2021 3:30 PM Docket No. 20-18674

In stark contrast, Mother's testimony was largely unbelievable. Mother tried to explain that her statement about Plaintiff not being the "father she needs him to be" was general and not specific to the Child. Mother also tried to explain that calling Ms. O          the Child's "aunt" was something she generally does with friends and not specific to a familial relationship with the Child. Mother tried to explain that, although the Child was born within nine months of Mother and Plaintiff being in a sexual relationship, the Child could not be Plaintiff's because she was born four weeks early. Mother tried to explain that the reason Mr. S          signed an Acknowledgment of Paternity in May 2018 because she wanted the Child to be eligible for Mr. S          's benefits. It was not, she suggests, in response to Plaintiff's message to Mr. S two days earlier asking to see the Child. Frankly, the Trial Court does not believe Mother when she says any of these things.

Having found Plaintiff met his burden by a preponderance of the evidence, the Trial Court granted the request for genetic testing. The results of testing will either show Plaintiff is the father by clear and convincing evidence or reveal he is not the father. Should the latter be shown, the Trial Court will resolve the pending Custody Complaint through dismissal due to lack of standing. If Mother is certain the Child is not Plaintiff's, then it would seem logical for her to assume genetic testing would confirm her assertion and welcome the validation it would provide. Especially considering Mother put forth no suggestion – either through argument or testimony – that a buccal swab of the Child's mouth would present any sort of danger, harm, or distress to the Child. Instead, it would seem Mother believes the same thing the Trial Court has found to be established by a preponderance of the evidence – Plaintiff's claim of paternity is valid.

Respectfully, the Trial Court acted within its discretion to grant Plaintiff's request for genetic testing to establish paternity.

10

Received County of Berks Prothonotary's Office on 05/24/2021 3:30 PM Docket No. 20-18674

## III. CONCLUSION

For the reasons set forth above, the Trial Court respectfully requests that the Honorable Superior Court affirm the Order for genetic testing.

**BY THE COURT:**

J. Benjamin Nevius, J.

**Distribution**
Original for filing
Certified copies to:
Francis J. Genovese, Esq.
Melissa A. Iacobucci, Esq.
Judge Nevius
CIM

11